ANNA A. LAITENBERGER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27918.)

ALFRED F. LAITENBERGER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27919.)

Court of Claims, August 16, 1947.

*Paul Muscarella* and *Alexander Tomanovich* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Arthur W. Mattson* and *Frank M. Noonan* of counsel), for defendant.

LAMBIASE, J. At or about 3:30 A.M. on March 4, 1945, claimant, Alfred F. Laitenberger, was driving his automobile in a general westerly direction on New York State Highway No. 100, also known as Route No. 104, also known as Ridge Road East, and particularly on that part thereof which runs through the Town of Webster, Monroe County, New York, and which is located about 100 feet west of the intersection of said Ridge Road East with another highway known as the Five Mile Line Road in said town. For the purposes of convenience herein, we shall refer to said highway as " Ridge Road East ", and to the intersection aforesaid simply as " intersection ". Riding with him in his automobile were the claimant Anna A. Laitenberger, who is his wife, his two children, and two other persons. Mrs. Laitenberger and her children were seated on the back seat of said automobile, and the others were seated on the front seat thereof with claimant, Alfred F. Laitenberger.

At said time and place claimant's automobile skidded upon an accumulation of water, snow, slush and ice then and there present on said highway; that it went to the right and to the left; and that it eventually left the travelled portion of the highway, and went into a ditch located on the south side of said highway some 650 to 700 feet distant from the point where the automobile had commenced to skid. Claimant, Anna A. Laitenberger, sustained severe and disabling injuries as a result of said accident, and she has filed a claim to recover damages for the same. Claimant Alfred F. Laitenberger's automobile was damaged, and he has filed a claim to recover for said damage and for damages alleged to have been sustained by him by reason of expenses incurred for medical and hospital care and attention for his wife, for other expenses incurred by him by reason of his wife's injuries and disability, and for loss of services and society of his wife, all of which he alleges to have been occasioned by reason of said accident. These claims were tried together, and we shall dispose of both of them herein and by one decision.

It is alleged by claimants that the State was negligent in its maintenance of said highway at said point and place in that it permitted the highway to remain in a slippery and dangerous condition and unsafe for travel by the public after reasonable notice of said condition; and in that it failed, after reasonable notice thereof, to give adequate, proper and sufficient warning of said dangerous condition to the public and to users of said highway.

The State, on the other hand, contends that there was no dangerous condition existing at the point where the accident happened; that if a dangerous condition did exist, the State had no notice of its existence prior to the accident; that previous to the happening of the accident herein and immediately after notice of the condition complained of herein had been received by the Town of Webster, New York, through the Superintendent of Highways, the Town of Webster, through this same officer, had taken proper and adequate steps to remedy the same and to warn the users of the highway thereof; and that claimants have failed to state and to prove facts sufficient to constitute a cause of action against the State.

Ridge Road East at the point thereon referred to herein, now is, and at all times in the claims mentioned was, a three-lane concrete highway, 30 feet in width, and running generally in an easterly and westerly direction. Starting at a point about 300 feet east of the afore-mentioned intersection and proceed-

ing westerly and past the scene of the accident, there is and there was at all times herein mentioned a 1° 30′ curve to the north.

On the afternoon of March 3, 1945, there was, and for some days previous thereto there had been, a considerable accumulation of snow on the shoulders of said Ridge Road East at or near the point of the accident. The temperature during the afternoon of that day had been above the freezing point. The snow, piled up on the shoulders of the highway and on lands abutting thereon, had melted rapidly. Water to the depth of one fourth to three fourths of an inch was flowing during that afternoon, in a general northwesterly direction diagonally across said highway, going from the south side to the north side thereof. This flow of water covered the entire highway for a distance of 75 to 100 feet along said highway immediately west of the point of the accident. In addition thereto, the south side of the highway was also covered with water from the aforesaid starting point to a point several hundred feet east of said intersection. The extension to the east of said water-covered area was caused by water and slush dripping from the underside of automobiles and vehicles as they travelled along said highway going from the west to east. Later on that day and before the happening of the accident, the area covered by said water became greater, and the depth of the water thus flowing across the highway increased to about two inches, so that the entire highway commencing at a point 100 feet west of the aforesaid intersection and for a distance of 200 feet to the west therefrom was thus covered with water. Upon reaching the north side of the highway west of said intersection, this water then flowed in a general westerly direction thereon, and some of it was getting into the cellar of the home of one Herman F. Klaver, whose house was located on the north side of said highway near the point of the accident herein. It was he who, in the late afternoon of that day, notified the Superintendent of Highways of the Town of Webster, New York, of the condition then and there prevailing; and in response thereto, the Highway Superintendent of the Town of Webster, New York, and one of his men came, later that afternoon, to the point where said water was thus accumulating. They stopped the flow of the water into the cellar of Mr. Klaver's home and drained off the highway a great deal of water which had accumulated thereon.

Upon the approach of darkness these men suspended work and left. There was water still on the highway at the time,

and although the situation had been ameliorated, it had not been completely remedied. Therefore, these men, before leaving, placed a lighted bomb flare on the north shoulder of said highway at a point about 35 feet west of the afore-mentioned intersection, and another one on the south shoulder of said highway at a point some 500 feet west of said intersection. They also placed at each of said points a red flag attached to a piece of wood, the wood in each instance being driven into the snow bank along the side of the highway.

The record establishes that this water on the highway, after sundown, began to freeze, and that at or about the time of the accident herein had become a mixture of water, slush and soft or partly formed ice, the consistency of the mixture being such that tracks made by automobiles traveling through it were visible. Passing vehicles splashed some of this water to the north side of the highway and onto a tree standing nearby where it froze coating the tree with a thin film of ice from the ground upwards for some distance.

We are satisfied that the condition prevailing at the point of the accident herein on the afternoon of March 3, 1945, and up to and including the happening of the accident was dangerous, and if left unremedied or unprotected, without sufficient lights, barricades, or guards, rendered the highway at said point unsafe for travel thereon, and for users thereof. (*Deming* v. *Terminal Railway of Buffalo,* 169 N. Y. 1; *Snowden* v. *Town of Somerset,* 171 N. Y. 99.) The snow, slush, ice and water on the highway, under the circumstances herein, constituted an unusual and dangerous obstruction to travel. (*Williams* v. *City of New York,* 214 N. Y. 259.) This fact is emphasized by the evidence which discloses that at or about the time of claimants' accident and immediately following it, other cars skidded when traveling over said spot.

The necessity for some degree of protection from the condition prevailing must have been appreciated by the Town Superintendent for he attempted to guard against accident and to give warning of the condition then and there existing by placing the afore-mentioned flares and flags. This he did despite the work which he and the other men with him had done that afternoon to remedy and to eradicate the condition. Had there been no attempt at all to guard this place of danger, there clearly would have been negligence. (*Chisholm* v. *State of New York,* 141 N. Y. 246.) Certainly adequate protection from and warning of said dangerous condition, then and there existing on the said highway, was due to the public and was required

in the exercise of reasonable care and diligence by whomever was charged with such duty after timely notice thereof. Under the circumstances herein, did there devolve such a duty upon the State of New York, and if so, did it discharge such duty with reasonable care and diligence?

There is evidence in the record that the State had knowledge of said dangerous condition on the afternoon of March 3, 1945. Notice of this dangerous condition had come to one George W. Ryan, who was, at all times herein mentioned, an employee of the State with the title of Senior Civil Engineer, in charge, among other things, of the maintenance and of the repairing of the particular section of the highway herein involved, and among whose duties there was that of investigating accidents occurring thereon. Claimant, Alfred F. Laitenberger, testified that in a conversation with Mr. Ryan had at his home on Sunday, March 11, 1945, to which Mr. Ryan had come to see and to talk to him relative to the accident herein, Mr. Ryan had told him that he was from the State Highway Department, and that his department had been notified on Saturday afternoon, March 3, 1945, about the condition of the highway at the point of the accident. (S. M. 14–15, 40.) It is significant that although Mr. Ryan was called and recalled as a witness by claimants and was also sworn as a witness by the State, no testimony was elicited from him by the State on the point of this conversation. It stands, therefore, uncontradicted by any direct evidence, and particularly by any direct testimony by Mr. Ryan, or by any legitimate inferences from the evidence. It is not opposed to the probabilities and is not in its nature surprising or suspicious. There is no reason, therefore, for denying to it conclusiveness. (*Hull* v. *Littauer,* 162 N. Y. 569; *Second Nat. Bank* v. *Weston,* 172 N. Y. 250.)

This matter of notice is most vital and important on the question of liability on the part of the State. Mr. Ryan was at all times mentioned herein a State engineer and by reason thereof was an employee of the State of New York, and in the instant case was acting within the scope of his employment; and the aforesaid notice, coming to him as it did in the course of his duties, was consequently notice to the State. (*Karl* v. *State of New York,* 279 N. Y. 555, 559.)

Ridge Road East is, and at all times in the claims mentioned was, a State highway and as such was part of the State's patrol system. In fact, the testimony indicates that it was patrolled year round by employees of the State in an effort to keep it safe for the users thereof. As such, it was under the general

supervision of the Superintendent of Public Works of the State of New York who has, among other things, general supervision of all highways and bridges which are constructed, improved and maintained, in whole or in part, by the aid of State moneys. (Highway Law, § 10.)

By section 12 of the Highway Law (subd. 1) of the State of New York it was at all times herein mentioned provided in pertinent part as follows: "The maintenance and repair of improved state highways in towns and incorporated villages, exclusive, however, of the cost of maintaining and repairing bridges having a span in excess of twenty feet shall be under the direct supervision and control of the superintendent of public works and he shall be responsible therefor."

By section 58 of the Highway Law of the State of New York, it is now, and at all times herein mentioned was, provided in pertinent part as follows: "The state shall not be liable for damages suffered by any person from defects in state highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the state under such system as the superintendent of public works may adopt pursuant to section twelve, but the liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the state under this chapter; but nothing herein contained shall be construed to impose on the state any liability for defects in bridges over which the state has no control."

By section 140 of the Highway Law of the State of New York, it is now, and at all times herein mentioned was, provided in pertinent part as follows: "The town' superintendent shall, subject to the rules and regulations of the department of public works, made and adopted as provided in this chapter: * * * 9. Cause the removal of obstructions caused by snow on state highways within the town. He shall also, during such time as patrolmen are not employed thereon, cause snow and ice to be removed from the culverts and waterways of such highways when necessary, and the cost thereof shall be paid from the miscellaneous or other town funds."

It has been held that section 58 of the Highway Law (formerly Highway Law, § 176) and section 8 of the Court of Claims Act (formerly § 12-a) must be read together, and that if the damages are suffered by reason of the misfeasance or neglect of the State, its officers, or employees, the State has waived its immunity by said section 8 of the Court of Claims Act whether

such damages were sustained on a highway, or otherwise, and at any time. (*Miller* v. *State of New York,* 231 App. Div. 363.)

Section 140 aforesaid has been construed to impose a specific duty on town superintendents to remove obstructions by snow on State and county highways. (*Ferguson* v. *Town of Lewisboro,* 213 N. Y. 141; *Cleveland* v. *Town of Lancaster,* 239 App. Div. 263; *Graham* v. *Town of Urbana,* 235 App. Div. 275; *Isaac* v. *Town of Queensbury,* 277 N. Y. 37.) It would appear, therefore, from the foregoing section, that there was the duty upon the town of removing from the highway the obstructions caused by the snow and by the water, slush and ice resulting from the melting of said snow, and to cause snow and ice to be removed from culverts and waterways. Was the State of New York, nevertheless, under the circumstances herein, called upon to take reasonable precautions to protect the users of the highway herein from and to warn them of this dangerous condition?

It is the duty of the State to maintain the State highways in a reasonably safe condition for travel. The State is not an insurer of the safety of travelers using its highways, but it is liable for failure to use ordinary care and reasonable caution in their maintenance and repair. (*Lane* v. *Town of Hancock,* 142 N. Y. 510, 521; *French* v. *State of New York,* 120 Misc. 867; *Monahan* v. *State of New York,* 41 N. Y. S. 2d 642; *Reuther* v. *State of New York,* 126 Misc. 773, affd. 217 App. Div. 801; *Doulin* v. *State of New York,* 251 App. Div. 767, affd. 277 N. Y. 558.)

We are of the opinion that under its general obligation to users of said highway under the circumstances herein the State was called upon to take reasonable precautions to protect them from and to warn them of this dangerous condition notwithstanding any other provision of law which may have placed said obligation and duty upon the town also. An analogous rule of responsibility has been upheld in and applied by the court in holding that where work is done by independent contractors in public streets for municipal corporations, the latter still remain charged with the care and control of the street in which the improvement is carried on, and with the responsibility to the public generally of exercising reasonable care and diligence in keeping the streets in a safe and proper condition for public travel. (*Storrs* v. *City of Utica,* 17 N. Y. 104, 108; *Turner* v. *City of Newburgh,* 109 N. Y. 301; *Deming* v. *Terminal Railway of Buffalo,* 169 N. Y. 1, 10, *supra; Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Miller* v. *State of New York,* 231 App. Div. 363, *supra; Giglio* v. *New York Telephone Co.,* 238 App. Div. 503.)

In addition to the defenses of the State herein to which we have already referred, the State has urged herein that the accumulation of water upon the highway was caused through the acts of a third person owning property at or near the point of the accident, and entirely unconnected with the State of New York; and that, therefore, there can be no liability upon the State under the circumstances of this case. We do not think that this constitutes a defense herein. Whether the liability of the political subdivision is or is not based on an expressed statute, yet if it has notice of the defect in time to repair it, it is not relieved from liability by the fact that the defect was created by third persons, although it may have a remedy over, against the person or corporation causing the same. (40 C. J. S., Highways, § 250.) In the absence of negligence, a municipal corporation is not liable for the unauthorized act of a third person. If, however, a municipal corporation has notice of an unauthorized obstruction in a street or of an excavation therein which renders the way unsafe, it is bound to remove the obstruction and to fill or to guard the excavation so as to protect the public from injury, and for a negligent omission of the duty, it will be responsible. (*Weed* v. *Village of Ballston Spa*, 76 N. Y. 329, 336; *Requa* v. *City of Rochester*, 45 N. Y. 129, 130; *Diveny* v. *City of Elmira*, 51 N. Y. 506; *Hume* v. *Mayor of City of New York*, 47 N. Y. 639; *Pettengill* v. *City of Yonkers*, 116 N. Y. 558, 563, *supra.*)

We do not decide the question of whether the acts of a third person wholly unconnected with the State of New York contributed to the creation of or brought about the dangerous condition described herein, since under the cases which we have cited herein such acts, even if established, would be unavailing to the State as a defense under the circumstances herein.

In view of the foregoing, we must now determine whether the State has discharged its duty and obligation herein. Claimants must prove their cases by a fair preponderance of the evidence. (*Marttas* v. *State of New York*, 133 Misc. 326; *Carhart* v. *State of New York*, 115 App. Div. 1; *Ripton* v. *State of New York*, 116 Misc. 765, 768, affd. 202 App. Div. 783.)

The evidence establishes that the employees of the Town of Webster, New York, in the discharge of their duties, had placed on the highway the bomb flares and red flags to which reference has already been made herein. These flares and red flags had been put in place and the former lighted sometime between 6:00 and 7:00 o'clock in the evening of March 3, 1945. They were thus in place when claimant, Alfred F. Laitenberger,

and his wife drove over the same section of the highway at about 7:30 P.M. that same evening in going from their home to the home of claimant's, Alfred F. Laitenberger's, brother in Union Hill, New York, a community located some distance east of the point of the accident. There is evidence in the case that the flares were observed lighted at 7:00 P.M. shortly after they were first lighted, and thereafter and at 8:00 P.M., 10:00 P.M., and midnight, respectively, of March 3, 1945, and lastly before the accident at 2:00 o'clock in the morning of March 4, 1945. Furthermore, the flare at the eastern approach to said spot was observed lighted one-half hour after the happening of said accident; and there is evidence in the case supplied by claimant, Alfred F. Laitenberger, himself, that as his car was skidding at the time of the accident, he observed a flash of light on his left-hand side, that is to say, the south side of the road. Presumably that was the lighted bomb flare which had been placed at the westerly approach to the spot where the accident occurred. There is ample evidence to sustain a finding that said flares were lighted, and that they and the red flags were in place all the time up to and including the time of the accident. (2 Wigmore on Evidence [3d ed.], § 437; 9 Wigmore on Evidence [3d ed.], § 2537; *Broderick* v. *City of New York,* 255 App. Div. 875.)

It would seem that the town's workmen who actually did the remedial work herein and the State, after notice, might have devised and employed more efficient and satisfactory means to have permitted a quick runoff of the water from the highway and to have prevented the subsequent condition which developed. It was the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset,* 171 N. Y. 99.)

It seems to us that the dangerous condition thus created herein was not adequately and properly guarded, and that the flares and flags which were put up to warn travelers on the highway did not efficiently and adequately accomplish the purpose of warning them of the hidden danger ahead. A warning to be of effect must be sufficient for the purpose intended. (*Trimble* v. *State of New York,* 263 App. Div. 233, 235; *Collentine* v. *City of New York,* 279 N. Y. 119; *Wasnick* v. *State of New York,* 183 Misc. 1073, 1076; *Ziehm* v. *State of New York,* 270 App. Div. 876.) Under the circumstances it seems to us that the State could have reasonably foreseen and anticipated the happening and occurrence of some such accident as hap-

pened herein. (*Torrey* v. *State of New York,* 266 App. Div. 900.)

We do not feel, however, that this negligence of the State was the sole proximate cause of the accident as we are of the opinion that this accident could not have happened without the contributing negligence of the claimant, Alfred F. Laitenberger. The over-all picture disclosed by all the evidence herein satisfies us as to this fact, or of the fact at least, that claimant, Alfred F. Laitenberger, has not proved himself free from contributory negligence. In this connection let us consider his testimony. We quote him verbatim: " When I approached the Five Mile Line Road there's a caution sign, and I slowed down for the crossing to watch cross traffic, and as I came to the crossing I stepped on the accelerator to pick up approximately the same speed, about 30 miles an hour. I slowed down for the crossing, and then as I came to the crossing and seen there was no traffic coming, I increased the speed slightly again. * * * As I came, the water splashed up in the car, and I then went off the accelerator. * * * I took off the foot from the accelerator. * * * The car slowed down. * * * I figured I was going to pull through the water and come out and go straight again, and when I came out the car started sideways in a diagonal direction to the road. * * * To the right, and then as I slid I tried to get the car to go to the left again and to straighten the car, and there seemed to be a tree on the right, and then I tried to avoid the tree due to the skidding, and at once the car turned to the left, and as we skidded the car seemed to increase in speed. That is through skidding, the momentum seemed to get greater instead of less. I didn't apply the brakes because I was skidding, and I didn't want to skid any more, and the car turned to the left quick and we just went into a snow bank and the car dropped down at once." (S. M. 5 and 6.)

The Laitenberger car started to skid when about 100 or 125 feet west of the intersection which was just about where the car struck the water, slush, and ice on the highway. This point is located on State's Exhibit A, approximately at station 297. The distance between stations as shown on said exhibit is 100 feet. The Laitenberger car came to a stop after having dropped into a depression or ditch filled with snow then and there existing off the south side of said highway, and particularly at a point in said ditch which is at the south or inlet end of a culvert there constructed and running in a northerly and southerly direction across said highway, and which culvert is shown on

State's Exhibit A to be located at station 290. Thus the Laitenberger car came to rest at a point about 700 feet from where it started to skid. The snow, ice, water, and slush as heretofore set forth herein commenced on the north side of the highway at a point 100 feet west of the aforesaid intersection and extended 200 feet to the west therefrom. The evidence indicates that the highway to the west beyond that was dry. There is evidence, therefore, that the Laitenberger car skidded or traveled with claimant Alfred F. Laitenberger's foot off the accelerator, approximately 500 feet on dry pavement.

Claimant, Alfred F. Laitenberger, was required to exercise caution in accordance with the unusual character of the place and circumstances where the accident occurred. Negligence is to be gauged by the ability of one to anticipate danger. The test of actionable negligence is what a reasonably prudent and careful person would have done under the circumstances. (*Lane* v. *City of Buffalo*, 232 App. Div. 334, 338.) We do not think that under the circumstances herein the control and operation by claimant of his automobile immediately before, at the time of, and immediately after the accident herein come up to and meet that test. Consequently, we feel that there can be no recovery on his claim, and that the same must be dismissed. We are, therefore, in our accompanying decision, making a finding to that effect.

We have arrived at a different conclusion in the claim of Anna A. Laitenberger. We find that claimant Anna A. Laitenberger was guilty of no negligence which contributed to the accident and to her injuries; that she is not chargeable with her husband's negligence; and that the same may not be imputed to her. (*Peek* v. *State of New York,* 137 Misc. 840; *Worden* v. *State of New York,* 221 App. Div. 671; same case 134 Misc. 848, affd. 228 App. Div. 739.) She is, therefore, entitled to recover against the State.

At the time of the accident, Anna A. Laitenberger was thirty-six years of age and apparently in good health. The injuries sustained by her as a result of said accident are serious and impaired her good health. She sustained a fracture of the second lumbar vertebra, bruises and brush burns; and she had a concussion of the brain which caused her headaches. She was in the hospital nineteen days, and then was taken to her home in an ambulance. At home she was kept in hyperextension to relieve the compression on the fractured part of the vertebra until such time as a cast could be applied. A cast was applied in approximately that position so that her back

was overextended from the normal position. She was confined to her home in bed until June 2, 1945, following which she was in a wheel chair for three months. She was unable to do any housework until July, 1945, when she started to do a little cooking. When the cast was taken off, she was put into a brace which was done earlier than ordinarily, due to the fact that she could not stand the pressure which kept her in hyperextension. She was still wearing the brace at the time of the trial. Although after the first six months of wearing it she was able to take it off nights, she was compelled to wear it at all times when in an upright position, and when either sitting or standing. She was still unable to bend or to stoop at the time of the trial, and was still suffering from occasional headaches and from nervousness. As late as the time of the trial she was still compelled to rest at intervals during the day and had pain in the back when maintaining an upright position for any sustained period of time. It was testified on the trial that she would have to wear the brace until at least March, 1946, and possibly longer if at that time she were having trouble with her back; that it was anticipated that a complete cure would be effected, and that no permanent disability would result, although it could not be stated when this would occur. We are, therefore, in an accompanying decision making an award to the claimant, Anna A. Laitenberger, in an amount which we think will adequately compensate her for the damages which she has sustained as enumerated herein.

In view of the foregoing we do not deem it necessary to discuss, and we have not, therefore, considered, any other alleged ground or grounds urged by the claimants as a basis for recovery against the State.

All evidence received herein by the court subject to being stricken out if not connected up is deemed to have been connected up in all instances, is admitted, and remains as part of the record herein with an exception in each instance to the party feeling aggrieved thereby.

The motion to dismiss the claim made by the State at the end of claimant's case in each of the above claims and upon which decision by this court was reserved until this time, is hereby denied, with an exception reserved to the State in each instance. The motion to dismiss the claim made by the State at the end of the entire case in each of the above-mentioned claims is granted upon the merits in the claim of Alfred F. Laitenberger against the State, and is denied in the claim of Anna A. Laitenberger, with an exception reserved in each instance to the party aggrieved thereby.