Feed A. Youtstg, P. J.
The Holiday Motel is located on the north side of Route 5 approximately one and one-half miles east of the city line of Utica, New York. In the general vicinity of the motel the aforesaid highway is 22 feet wide with 9-foot shoulders. It is paved with macadam placed on concrete. The highway is graded three sixteenths of an inch per foot from the center thereof. For approximately 500 feet east and west of the motel the highway is substantially at grade and for all practical purposes can be considered quite flat. For approximately 600 feet east of the motel the highway alignment is straight. The typical type of ditch for this highway is an open one, designed not only to take drainage from the road, but also from the adjacent land. The highway was constructed in 1940 in accordance with the standards of good engineering practice then prevailing.
On March 16, 1959 agents of the State in the course of their duties of patroling the highways found a considerable area of the road, adjacent to the Holiday Motel, flooded by water running across the pavement at several different locations. The largest area of inundation was directly in front of the motel, and extended approximately 200 feet. The man in charge of the crew characterized the situation as “ a bad water hazard ’ ’ and reported such condition to his superiors. He placed approximately 500 pounds of sand in the water, but made no effort to ascertain the source of the water, or the condition causing the water to flood the highway. Nor did he take any steps to remedy the situation except spreading the sand we have alluded to. No flares were set out or warning signs erected to apprise the traveling public of the existing dangerous condition.
It should be noted at this point that a similar condition existed on Route No. 5 approximately two miles east of the Holiday Motel and flares were set out by State crews at such location.
*731 Although on March 16,1959 the condition in front of the Holiday Motel was reported to the office of the resident engineer, no further action was taken. The condition persisted until the evening of March 18,1959. Subsequently the water froze so that in the early hours of March 19, 1959 a sheet of ice covered the highway in the area of the Holiday Motel. In all approximately four tenths of a mile was covered intermittently with sheets of ice. The longest section of ice was in the vicinity of the Holiday Motel. This sheet of ice in front of the motel was very slippery.
During the period from March 16 to March 19, 1959 there were piles of snow along the shoulders of Route No. 5 and such snow was melting. Apparently water from the melting snow, instead of going into the ditches, flowed across the highway. There is no record of when the drains or ditches in the area of the Holiday Motel were cleaned prior to March 19, 1959. Moreover the light-maintenance foreman for the area could not remember when the ditches in question were cleaned.
At approximately 3:00 a.m. on March 19, 1959 the claimant, Ronald C. Thomas, was a passenger in a 1959 Renault Dauphine, four-door hardtop operated by the decedent, Sarverio Mercurio. As they approached the Holiday Motel, traveling west toward Utica, the vehicle skidded on the ice, swerved a bit from side to side then ran diagonally off the north side of the road striking an abutment supporting the sign of the Holiday Motel. After striking the abutment the vehicle turned over just west thereof killing the driver and severely injuring the claimant, Thomas.
The evidence shows that at the time of the accident there was ice present on the highway, as we have stated, and that such ice was very slippery and that there were no flares or any type of warnings indicating the dangerous condition existing in the area in question.
It is the claimants contention that the negligence of the State in maintaining the hazardous highway condition, of which it actually had notice, and in failing to erect adequate and suitable warnings of such condition, was the sole proximate cause of the accident.
The State on the other hand denies any negligence on its part and claims that the negligence of the driver, Mercurio, was the sole proximate cause of the accident. It is undisputed that the claimant, Thomas, has established his freedom from contributory negligence.
We have considered all the facts bearing on the question of the State’s negligence, and upon such facts we find that the State of New York was guilty of negligence in maintaining the highway at the scene of the accident in a dangerous condition. *732 (Torrey v. State of New York, 266 App. Div. 900; Laitenberger v. State of New York, 190 Misc. 633, affd. 273 App. Div. 942; Dunn v. State of New York, 52 N. Y. S. 2d 128.) We also find that the State was guilty of negligence in failing to erect suitable signs or flares to warn approaching traffic of the dangerous condition. (Canepa v. State of New York, 306 N. Y. 272; Ziehm v. State of New York, 270 App. Div. 876; Laitenberger v. State of New York, supra.)
We now proceed to the question of the negligence of the driver, Mercurio. Since this gentleman is dead and since the claim of the claimant, Rose Mercurio, is based upon the death of said Sarverio Mercurio, the burden of proof of his contributory negligence is on the State. (Decedent Estate Law, § 131.)
The claimant, Thomas, together with Mercurio as driver, had travelled from Utica, New York, to Albany, New York, on the afternoon of March 18, 1959, after staying for several hours in Albany they started back to Utica at approximately 11:00 p.m., or shortly thereafter, and proceeded without incident until the occurrence of the accident. There is no evidence to indicate that Mercurio had any real familiarity with Route No. 5 or the condition existing on such highway in front of the Holiday Motel on the date in question. Although he passed this area on his way to Albany on the afternoon of March 18, 1959, there is no proof that the decedent had such knowledge of the highway in question which would enable him to remember and recognize the same location on a dark unlighted highway at night, as he approached such location from the opposite direction.
On the night in question Route No. ,5 was free of ice except for the location of the accident and an area approximately two miles east thereof, to which we have already referred to and where warning signs, flares, had been set out by the State’s forces on March 16,1959.
It is the State’s contention that Mercurio was exceeding the maximum speed of 50 miles per hour at the time of the accident. There is little physical evidence to support this contention. While the driver was killed as a result of a fractured skull and claimant, Thomas, was seriously injured and the vehicle was severely damaged, we note that the vehicle involved was a very light one affording little protection to the occupants. The photographs in evidence, Exhibits 10, 11, 12, 14, show but little damage to the motel sign, which was struck by the vehicle. Immediately after striking the sign, which was in close proximity to the shoulder of the road, the auto turned over on its top and came to rest thereon.
*733 Mercurio ’s car skidded on the ice at a point adjacent to the entrance of the motel and travelled approximately 100 feet on the ice and then went off diagonally to the right for approximately 72 feet before striking the motel sign.
All the skidding was upon slippery ice and it did not cover a great distance (172 feet) before going off the road and striking the sign. (Cf. Laitenberger v. State of New York, 190 Misc. 633, affd. 273 App. Div. 942, supra.) Thus, the physical facts negate the State’s contention of excessive speed.
The State relies primarily on the testimony of Trooper Wassail who questioned Thomas approximately three days after the accident while the said claimant was a patient on the critical list at St. Elizabeth’s Hospital in Utica. At the time of the interview Thomas was suffering from a severe cerebral concussion in addition to his other serious injuries. Because of his condition Thomas was denied any visitors, nevertheless he was interviewed by Trooper Wassail and allegedly told the investigating officer that Mercurio was traveling more than 50 miles per hour on the return trip, that he requested Mercurio to slow down several times, and that Mercurio was operating the vehicle at a speed of 70 miles per hour at the time he started to skid on the ice in front of the Holiday Motel. Trooper Wassail, in making a special report to his superiors, reported that Thomas told him that he, Thomas, estimated the speed of the car just prior to the accident at 70 miles per hour. However, in making out the accident report M. V. Form 104-A for the Motor Vehicle Bureau the investigating trooper made no reference to excess speed as a cause of the accident. Furthermore this witness admitted upon the trial, that despite Thomas’ alleged statement, there was a question in his mind as to the actual speed of the vehicle.
We note that the Attorney-General requests us to find that the vehicle was traveling at a rate in excess of 60 miles per hour, rather than 70 miles per hour, the speed given by the trooper.
Thomas denied that he ever saw Trooper Wassail and that he ever made the statement ascribed to him by the investigating officer. In view of Thomas’ condition this failure to recall anything is understandable. However, upon the trial Thomas testified that Mercurio never exceeded 35 miles per hour during the trip and was going at the rate of 25 miles per hour when he struck the ice. Thomas did not testify that he had been observing the speedometer or give any other basis for his estimates of the speed. As far as we can determine the estimates were merely his opinions and we do not think they were too accurate. *734 Considering the time, place, and traffic conditions at the time of the accident we do not believe that Mercurio operated his vehicle at such moderate speed. However, on the other hand, we do not find any substantial evidence indicating he was exceeding the maximum permissible speed of 50 miles per hour.
Upon consideration of all the relevant facts we find that the fair preponderance of the credible evidence will not support a finding that Saverio Mercurio was negligent in the operation of his vehicle on March 19, 1959. Hence we find that the negligence of the State of New York was the sole proximate cause of the injury sustained by the claimant, Thomas, as well as the death of Saverio Mercurio.
Letters of administration were duly issued to Bose Mercurio for the administration of the estate of Saverio Mercurio by the Surrogate of Oneida County on June 10,1959.
Decedent, Saverio Mercurio, was approximately 23 years of age at the time of the accident and was survived by his widowed mother, aged 52, one of the above claimants and by one sister. He was in good health and was employed at Utica State Hospital, receiving a biweekly salary of $114.68. He contributed $30 to $40 per week to his mother, this included his board, and in addition thereto paid occasional bills for her. He was also attending an electronics course at Utica State College. His life expectancy was 40.17 years, his mother’s life expectancy was 19.49 years. Special damages total $1,066.95, including funeral, ambulance, hospital and doctor’s fees.
Claimant, Bonald C. Thomas, was approximately 19 years of age at the time of the accident, but has since become of age and, this being so, on motion of counsel we directed at the trial herein that the title in Claim No. 36722 be amended to read Bonald C. Thomas, Claimant, rather than Bonald C. Thomas, an infant, by Irene T. Vincent, his Gfuardian ad Litem.
At the time of the accident, claimant, Thomas, was a student at Utica State College and was also employed as an attendant at Utica State Hospital, on a part-time basis earning approximately $30 per week, which he turned over to his mother who in turn supported him and paid his tuition in college.
As a result of the accident the claimant, Bonald C. Thomas, sustained serious personal and permanent injuries, chief of which were a severe brain concussion, fracture of the right ulnar and right radius of the arm, traumatic synovitis of the neck and back, and a nephritic condition due to trauma in the kidney area, which resulted in the removal of one of the claimant’s kidneys, also a rupture of the spleen and subsequent surgical removal thereof. Between the time of the accident and *735 July 31, 1959 he was hospitalized on three different occasions. We have adopted detailed findings submitted by the claimant with respect to his injuries and see no need to repeat all of the details herein.
While a surgeon called by the claimant was unable to state with reasonable medical certainty that the boy’s life would be shortened by the fact he has only one kidney, the claimant, Thomas, nevertheless, has to face the fact that his life will be terminated if he has any serious malfunctioning of his remaining kidney. Furthermore, as a result of the operations and the lacerations sustained at the accident the claimant has scores of sutures in his body and as a result thereof he has considerable permanent scars about his body which would be visible when going bathing. Claimant was unable to resume his employment until June, 1960, and lost a full semester at college. The medical bills which were paid by the claimant, Irene T. Vincent, amounted to $4,570.85, in addition thereto the claimant, Irene T. Vincent, lost the wages of her infant son in the amount of $600 which he would have given her had he not been injured. In her claim Irene T. Vincent sought the sum of $3,046.20; upon the trial such claim was amended to conform to the proof.
As a result of the negligence of the State of New York the claimants have been damaged as follows:
Rose Mercurio as administratrix of the estate of Saverio Mercurio in the sum of $34,111.95.
Ronald C. Thomas, in the sum of $45,000.
Irene T. Vincent, for medical expenses and loss of services of her infant son, Ronald C. Thomas, in the amount of $5,170.85.
Claimants are entitled to judgments against the State of New York in the above amounts.
The claimant, Rose Mercurio, as administratrix of the estate of Sarverio Mercurio, deceased, is entitled to interest on the aforesaid sum herein awarded her from March 19, 1959 to the date of entry of judgment herein.