FRANK B. REYNOLDS, as Administrator of the Estate of FRANK B. REYNOLDS, JR., Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 36323.) (Action No. 1.)

PATRICIA DE CASTELLO, as Administratrix of the Estate of DANIELLE F. MAMBOURY, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 36407.) (Action No. 2.)

WILLIAM F. TORREY, JR., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 36417.) (Action No. 3.)

Court of Claims, June 1, 1962.

*Cramer & Donovan* (*Ralph S. Cramer* and *M. Bates Davidson* of counsel), for claimant in Action No. 1. *Joseph Amaru* for claimant in Action No. 2. *Perkins, Daniels, McCormack & Collins* (*Ralph S. Cramer* and *M. Bates Davidson* of counsel), for claimant in Action No. 3. *Louis J. Lefkowitz, Attorney-General* (*Harold S. Coyne* and *Joseph A. Shapiro* of counsel), for defendant.

PAUL C. REUSS, J. The above-entitled claims all arose out of the same accident and were duly filed in the office of the Clerk of the Court of Claims, and a copy of each was served upon the Attorney-General.

Patricia de Castello, the administratrix of the goods, chattels and credits of Danielle Francoise Mamboury, deceased, one of the claimants, failed to appear upon the trial by counsel or otherwise and her claim was, accordingly, dismissed for lack of prosecution.

On March 1, 1957 the claimant, Frank B. Reynolds' intestate Frank B. Reynolds, Jr., together with claimant, William F. Torrey, Jr., both of whom were students at Cornell University left the university in a vehicle owned and operated by Stephen W. Bailey, another student and drove to New York City. They spent the evening of March 1, 1957 at the apartment of friends in New York, attended a wedding on Long Island the next day, and at about 9:00 P.M., March 2, 1957 left New York to return to college at Ithaca, New York.

Two additional passengers, the decedent Danielle Mamboury and one William Tuck, joined the original party for the return trip to Cornell.

Upon the return trip the members of the party took turns driving. At approximately 2:00 A.M. of March 3, in the neighborhood of Roscoe, New York, the owner of the vehicle, Bailey, who was sleeping was awakened by his companions and took over the driving assignment. At this time the ground was covered with a light dry snow, one half to three quarters of an inch in depth. As Bailey proceeded west on New York State Route No. 17, a main highway in Southern New York, constructed and maintained by the State of New York, he found the said highway to be icy and slippery in spots.

Approximately 4 miles west of Roscoe he observed a stated speed sign indicating a recommended speed of 35 miles per hour

surmounted by a sign indicating a curve to the right. As he had been proceeding at a speed of 30 to 35 miles an hour, he maintained said speed as he went into the curve. At a point where the curve became sharper the rear end of his vehicle started to slide and skid. He removed his foot from the gas and tried to straighten his car, but failed to do so. The rear end slid approximately 5 or 6 feet into the eastbound lane, where it was struck by an eastbound tractor trailer. The collision demolished Bailey's vehicle and resulted in the instantaneous deaths of Frank Reynolds, Jr., and Danielle Mamboury, and caused serious injuries to the claimant, William F. Torrey, Jr.

The highway in question had originally been reconstructed in 1926, as a two-lane concrete highway, typical section indicated each lane as 9 feet wide, with 3-foot shoulders. Route No. 17 at the scene of the accident was resurfaced in 1950, and again resurfaced and widened to a width of 21 to 24 feet in 1955, without the acquisition of additional right of way, the widest portion of the road being on the curves.

The curve at which the accident in question occurred was 1,477 feet long and curved to the right for westbound traffic. Initially the degree of curvature is 8 degrees and 40 minutes; as one proceeds west this degree of curvature continues for 851 feet. The curve then increases to 14 degrees and continues at such degree of curvature for 626 feet. From a point slightly east of the easterly terminus of the curve the highway descends 4.19% as one travels in a westerly direction. This rate of descent continues into the curve for 489 feet. Then the rate of descent levels off to 1.6% for 300 feet. Then the highway descends at a grade of 5.4% for 575 feet. The point at which the rate of descent of the highway increases from 1.6% to 5.4% is 62 feet west of the point where the curvature of the highway increases from 8 degrees and 40 minutes to 14 degrees.

The curvature was banked so that the south edge of the pavement was 2 feet higher than the north edge. The north shoulder at the scene of the accident varied from $3\frac{1}{2}$ to 4 feet in width. However, on the south shoulder the guide railing was from 1 foot 11 inches to 2 feet 6 inches from the paved portion of the highway in the vicinity of the accident, thus restricting its use in case of emergency; and at this point we note that the tractor trailer struck the guide rail in an attempt to avoid the Bailey car.

The curve and 35-miles per hour recommended speed sign was located 268 feet east of the easterly terminus of the curve. In addition thereto there were three 20-inches by 40-inches large arrow signs for westbound traffic located on the south shoulder

of the highway at various points indicating the continuance of the curve. Highway delineators were placed on the south side of the highway for eastbound traffic, but there were none on the north shoulder, although they had been recommended by the State Safety Engineer.

Between January 1, 1955 and the date of the accident there were five other accidents in the same locality under similar weather and road conditions. One of these accidents occurred before the highway was resurfaced in 1955. However, the resurfacing involved no major change in the highway.

Upon the trial there was considerable testimony with respect to the proper size and required emphasis of the curve and the 35 miles per hour stated speed signs. Inasmuch as Bailey observed these signs and responded to them the size of the signs exerted no cause or influence upon the occurrence of his accident. However, there was nothing to indicate to a westbound driver that he was approaching a compound curve whose curvature suddenly changed from 8 degrees and 40 minutes to 14 degrees, and that a short distance after such change the incline of the highway increased to minus 5.4%. The curve sign did not adequately warn travelers on the highway of hidden dangers ahead. (*Laitenberger* v. *State of New York,* 190 Misc. 633, affd. 273 App. Div. 942.)

Although tests by a Bell Bank Indicator indicated a recommended speed of 35 miles per hour we find that consideration of the accident record, the compound curve and the descending grade indicated a recommended speed of 25 miles per hour.

In addition thereto we find that the use of an 8 degrees and 40 minutes curve leading into a sharp 14 degrees curve was improper highway construction, and we find that the construction of the guide rail within 1 foot 11 inches of the pavement, thereby limiting the shoulder, was also improper highway construction.

At approximately 2:00 P.M. on March 2, 1957 the district office of the Department of Public Works notified the Resident Engineer's office in Delaware County of an approaching storm. It started to snow in that county on March 2, 1957 at approximately 6:30 P.M. At approximately 8:00 P.M. on the same date Stephen Kurpil, a New York State Trooper, found Route 17 in the general vicinity of Roscoe, New York, to be slippery. He called his superior reporting the conditions and requested sanding of the roads in the vicinity of Roscoe. Despite the warning and the request of the trooper there was no sanding of Route 17 between

Roscoe and the scene of the accident prior to the occurrence of the subject accident.

We find that the combination of the improperly constructed curve, inadequate shoulders, inadequate warning signs, improper recommended speed, together with the icy highway which the State of New York neglected to sand, although it had due notice of the condition (*Laitenberger* v. *State of New York,* 190 Misc. 633, affd. 273 App. Div. 942, *supra*) constituted a hazardous condition, which was the proximate cause of the accident resulting in the death of Frank B. Reynolds, Jr. and the injuries to the claimant, William F. Torrey, Jr. We further find that the hazardous condition was due to the negligence of the State of New York. Claimant, William F. Torrey, Jr., and the decedent, Frank B. Reynolds, Jr., were free from contributory negligence.

The claimant, William F. Torrey, Jr., sustained a fracture of the left ankle and an injury to the nerve of his right arm, which resulted in a complete paralysis of such arm, and the ultimate amputation of the arm, nine inches from the shoulder, in June of 1960. As a result of his injury he incurred medical expenses in the amount of $3,274.51. We disallow the item of $100 in the medical bill of Benson S. Ray, M.D., which charges such sum for a deposition rather than medical treatment.

Said claimant, William F. Torrey, Jr., has already received the sum of $16,500 in compromise of an action against Richard Zwart and Stephen Bailey, reserving, however, the right to proceed against the State of New York. The claimant, William F. Torrey, Jr., is entitled to an award against the State of New York in the amount of $100,000, less $16,500 or $83,500..

We have adopted claimant's requests bearing on the damages sustained by the next of kin of Frank B. Reynolds, Jr., and see no necessity to repeat them herein.

The funeral bill of the aforesaid decedent amounted to $777. The claimant, Frank B. Reynolds as administrator of Frank B. Reynolds, Jr., compromised an action against Richard Zwart and Stephen Bailey for the sum of $9,000, reserving the right to proceed against the State of New York.

Frank B. Reynolds, as administrator of the estate of Frank B. Reynolds, Jr., is entitled to an award against the State of New York in the sum of $75,000 less $9,000 or $66,000, with interest on the latter sum from March 3, 1957 to the date of entry of judgment herein.

The claim of Patricia de Castello as administratrix of Danielle Francoise Mamboury is dismissed for lack of prosecution.