JOSEPHINE C. LOWELL, Respondent, *v.* HARRIET T. WILLIAMS, Appellant, Impleaded with PAUL FRANK, Defendant.

Second Department, May 17, 1918.

**Motor vehicles — negligence — liability of owner for negligence of chauffeur causing injury to person invited to take a ride.**

Where the owner of an automobile which was driven by her own chauffeur invites a friend to ride with her and the friend is injured in a collision caused by the negligent driving of the chauffeur, the owner of the car is liable under the rule of *respondeat superior*, which applies under these circumstances.

BLACKMAR and RICH, JJ., dissented, with opinion.

REARGUMENT of an appeal by the defendant, Harriet T. Williams, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 16th day of May, 1917, upon the verdict of a jury for $4,000.

*Joseph F. Murray* [*Robert M. McCormick* with him on the brief], for the appellant.

*Edward J. Byrne* [*Sidney V. Lowell* with him on the brief], for the respondent.

KELLY, J.:

On November 5, 1915, the plaintiff was invited by the appellant to ride with her in appellant's automobile, operated by appellant's chauffeur, from Garden City to Brooklyn. While traveling west on the Jericho turnpike the automobile came in collision with a motor truck, and the plaintiff was injured. She brought this action against the appellant Williams and the owner of the motor truck, alleging that both of said vehicles were carelessly operated, and that she was injured through the negligence of defendants and without fault on her part. The jury rendered a verdict in favor of plaintiff against the defendant, appellant, acquitting the defendant motor truck owner of blame. The accident happened about dusk, and the evidence as to the speed of appellant's automobile, failure to observe the motor truck

or to stop or otherwise avoid the collision, necessitated the submission of the question of appellant's negligence to the jury, and their verdict cannot be said to be against the evidence. The only matter on which there is any difference of opinion among the members of this court is whether the rule of *respondeat superior* applies in this case as between the appellant and her chauffeur so as to make her liable for his negligence. The learned trial justice charged the jury that a master is responsible for the acts of his servant within the scope of that servant's employment, and if the servant be negligent and that negligence results in an injury to a third person, that third person has a cause of action against the master, and that in this case if appellant's chauffeur was negligent, she was chargeable with such negligence. No exception was taken to the charge, but Mr. Justice BLACKMAR is of opinion that the relations of plaintiff and appellant in this case make the rule inapplicable.

The doctrine of *respondeat superior* as a rule of civil liability is one of the most ancient known to our system of jurisprudence, dating back to the fourteenth century. (Professor Wigmore, " Responsibility for Tortious Acts," 7 Harvard Law Review, 315.) Judge HOLT announced it in 1691: " For whoever employs another is answerable for him, and undertakes for his care to all that make use of him " (*Boson* v. *Sandford*, 2 Salk. 440; 3 Mod. 321); and Lord BROUGHAM said: " I am liable for what is done for me and under my orders by the man I employ, for I may turn him off from that employ when I please; and the reason that I am liable is this, that by employing him I set the whole thing in motion; and what he does, being done for my benefit and under my direction, I am responsible for the consequences of doing it." (*Duncan* v. *Findlater*, 6 Cl. & Fin. 910.) The principle is laid down by Blackstone (1 Black. Com. chap. 14): " As for those things which a servant may do on behalf of his master, they seem all to proceed upon this principle, that the master is answerable for the act of his servant, if done by his command, either expressly given or implied: *nam qui facit per alium, facit per se* [for he who does a thing by the agency of another, does it himself]." Chancellor KENT sustains it (Kent Com. pt. IV, Lect. XXXII), and we know that originally the civil law held the *pater familias*

liable for all the misdeeds of his servants and children. It is based not only on the inherent justice of holding a man responsible for the conduct of others acting for him at his request or by his command, but is adopted from general considerations of policy and security. (*Farwell v. Boston & Worcester R. R. Corp.*, 4 Metc. [Mass.] 49, 56.) It enters into the every day life of all of us, and under modern conditions is part and parcel of our civilization. It is said that the doctrine is not applicable as between master and servant in relation to a gratuitous guest, invited by the master, as in the present case, to ride in a carriage or automobile purely as a courtesy or kindness. The question of appellant's liability presented by the plaintiff must be answered from the cold legal standpoint, unaffected by other considerations. That the owner of a vehicle inviting another to ride with him as a favor, nevertheless owes some duty to his guest, cannot be disputed. He cannot willfully injure him or expose him to unnecessary or unusual dangers. Nor can it be disputed that in such case the owner would be responsible for his own personal negligence in caring for his guest. Such was the case of *Patnode* v. *Foote* (153 App. Div. 494), where the guest recovered for damages sustained by reason of the reckless driving of the host. The contention that the owner is not responsible seems to be based upon the theory that the plaintiff, accepting defendant's invitation, and placing herself, as did appellant, in the care of the chauffeur, the latter was acting for her as much as for the appellant, and for the time being was the servant of both. The doctrine of *Massaletti* v. *Fitzroy* (228 Mass. 487; 118 N. E. Rep. 168) appears to turn upon degrees of negligence whether slight, ordinary or gross, which the court holds still exist in Massachusetts. In that case the court held that the defendant could not be held liable to an invited guest save for gross negligence. We do not recognize these distinctions or degrees of negligence in this State, referring entirely to the degree of care required in the particular case presented, some relations demanding extraordinary and others but ordinary care. If a man fulfills the obligation of care placed upon him, he is not negligent, and if he fails he may be adjudged negligent. It seems to us that once it is conceded that the appellant owed

to her guest the duty of reasonable care, she cannot escape liability for the negligence of her chauffeur on the facts in this case. It may be that the doctrine of *respondeat superior* does not apply to every case of a person riding gratuitously upon a friendly invitation from the owner of a vehicle. There may be cases where the relation of the owner of the vehicle and the person so invited would partake of the nature of a joint adventure, in which the chauffeur, the general servant of the owner, would, for the time being, become the servant of both, or where the doctrine of assumption of risk might bar recovery. In such cases the doctrine of *respondeat superior* might not apply. But on the evidence here there is nothing to justify a finding of joint adventure or assumption of risk. Indeed there is some evidence from appellant's chauffeur tending to show active personal supervision of the operation of the automobile by the appellant. But the mere fact that the plaintiff was a guest, riding free, accepting a courtesy and kindness from appellant, does not prevent the application of the rule. In *Philadelphia & Reading R. R. Co.* v. *Derby* (14 How. [U. S.] 468) the Supreme Court of the United States held the railroad company liable to Derby, a stockholder, and the president of another railroad company, for injuries received while the guest of the president of the defendant company riding on one of its locomotives in collision. Mr. Justice GRIER, writing for the court, said: " It is no answer to an action against the master for such injury, either, that the plaintiff was riding for pleasure, or that he was a stockholder in the road, or that he had not paid his toll, or that he was the guest of the defendant, or riding in a carriage borrowed from him, or that the defendant was the friend, benefactor, or brother of the plaintiff. These arguments, arising from the social or domestic relations of life may, in some cases, successfully appeal to the feelings of the plaintiff, but will usually have little effect where the defendant is a corporation, which is itself incapable of such relations or the reciprocation of such feelings." And in writing of the obligation of the railroad company to the plaintiff the court said: " This duty does not result alone from the consideration paid for the service. It is imposed by the law, even where the service is gratuitous. ' The confidence induced by undertaking any service for

another, is a sufficient legal consideration to create a duty in the performance of it.' See *Coggs* v. *Bernard*, and cases cited in 1 Smith's Leading Cases, 95. It is true, a distinction has been taken, in some cases, between simple negligence, and great or gross negligence; and it is said, that one who acts gratuitously is liable only for the latter. But this case does not call upon us to define the difference (if it be capable of definition), as the verdict has found this to be a case of gross negligence. When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of ' gross.' " And our own Court of Appeals has decided that a railroad company is liable to a guest riding on a locomotive with the permission of the engineer contrary to the rules, who was injured in a collision, Judge WILLARD BARTLETT writing for the court: " The concrete rule of law which we deem applicable to such a collision as occurred in this case is that the defendant whose freight train ran into the Wabash engine at the crossing was bound to exercise ordinary care not to injure any person riding upon that engine whose presence thereon was not of such a character as to constitute him a wrongdoer." (*Grimshaw* v. *L. S. & M. S. R. Co.*, 205 N. Y. 371.) If the appellant here owed the plaintiff the duty of reasonable care, she was responsible for the conduct of her servant, doing her work, carrying out her orders in her immediate presence not only from the necessities of the case but on the ordinary principles of right and wrong. The plaintiff was powerless to interfere. Granted the obligation of reasonable care, we do not think we can abandon this well-settled salutary and reasonable doctrine on the facts here. There is an interesting discussion of the rule in Dr. Baty's " Vicarious Liability " (Oxford University Press, 1916), but, like other critics of existing conditions, the learned author does not give us anything in place of it. In this age of radical reforms in the relations of

mankind, no one has suggested any better or different doctrine. We conclude, therefore, that the learned trial justice correctly stated the law, and that the judgment must be affirmed.

MILLS, J., concurred; PUTNAM, J., concurred in separate memorandum; BLACKMAR, J., read for reversal and for dismissal of the complaint, with whom RICH, J., concurred.

PUTNAM, J. (concurring):

I may add to Mr. Justice KELLY's opinion that all of us agree that the obligation of care towards another does not rest on money or gain. I think the responsibility for the chauffeur's driving a motor car is part of that wide rule, necessary for public safety, that an owner and employer should answer for those to whom he intrusts such property with its operation and the means of inflicting injury. *Respondeat superior*, therefore, is not a formula to be put on or off at a judge's pleasure. It is a safeguard for the individual, becoming increasingly essential under modern conditions. I concur to affirm.

BLACKMAR, J. (dissenting):

I cannot concur in the judgment about to be pronounced. It seems to me contrary to natural justice. Plaintiff's injury was not caused by any fault or negligence personal to defendant. It is in accordance with the fundamental axioms of law, derived from the experience of men and approved by the natural instincts of justice, that every man should be responsible for his own acts. But the doctrine that one man shall answer for the misconduct of another is a rule of the common law devised to meet the requirements of a complex social state. This doctrine is expressed by the term *respondeat superior*, and either the defendant is not liable or her liability rests on this doctrine. The doctrine of *respondeat superior* is an arbitrary rule of law. As was said by Chief Justice SHAW in *Farwell* v. *Boston & Worcester R. R. Corp.* (4 Metc. 56): "The maxim *respondeat superior* is adopted in that case, from general considerations of policy and security." It is not universally applicable. The rule that a master is not liable to one servant for the negligence of a fellow-servant is an exception to the rule. In some jurisdictions it is held that another exception is in the case of charitable corporations. These imitations of the rule are adopted in view of the relations

between the person injured and the master, and may be broadly expressed by the rule of assumption of risk. At common law a servant entering the employ of his master assumes the risk of the negligence of his fellow-servants. This is equivalent to saying that the doctrine of *respondeat superior* does not apply. I do not think there is any controlling authority which compels us to hold the defendant liable. Neither *Patnode* v. *Foote* (153 App. Div. 494), nor *Adams* v. *Tozer* (163 id. 751), nor *Grimshaw* v. *L. S. & M. S. R. Co.* (205 N. Y. 371) is such. In the *Patnode* case the defendant was personally negligent. In the *Adams* case the plaintiff was on the wagon, not as an invited guest, but for the purpose of assisting the driver. In the *Grimshaw* case the plaintiff's intestate was riding on a locomotive of the Wabash railway and was injured by the negligence of an employee of the Lake Shore and Michigan Southern Railway Company. No such relation existed between the plaintiff and the defendant in that case as to require the limitation of the doctrine of *respondeat superior*. The case of *Philadelphia & Reading R. R. Co.* v. *Derby* (55 U. S. [14 How.] 469) may also be distinguished in that the liability was for gross negligence and the plaintiff in error was a railroad corporation, incapable of personal care or negligence and able to act only through employees intrusted with the management of a dangerous agency. The plaintiff in the case at bar accepted the defendant's invitation, placed herself, as did the defendant, in the care of the chauffeur, and the defendant, as to carrying the plaintiff, was not engaged in an, undertaking for her own benefit, but for the plaintiff's. If, as was said by BEST, C. J., in *Hall* v. *Smith* (2 Bing. 156): " The maxim of *respondeat superior* is bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it," it has no application in this case. *Cessante ratione legis, cessat et ipsa lex.* Of course I do not suggest that the doctrine of *respondeat superior* is a " formula to be put on or off at a judge's pleasure." It is a rule of the common law which, like every other such rule, should be kept within the limitation prescribed by the reasons which moved its adoption, and not, by the inertia of long-

continued repetition, be permitted to stray into a field of law and over relations where its operation results in obvious injustice. I find nothing in the quotations contained in the learned and able opinion of my brother KELLY, nor in his reasoning thereon, inconsistent with my suggestion that the relation between the person injured and the master of the servant whose negligence caused the injury, may be such as to require that the doctrine of *respondeat superior* be not applied. Conceding that, and assuming that justice is the object of the law, is not this such a case?

If the rule enunciated by the Supreme Court of Massachusetts in *Massaletti* v. *Fitzroy* (228 Mass. 487; 118 N. E. Rep. 168) is to prevail, the defendant is not liable on this record, for there is no finding of gross negligence, nor could there be under the charge of the court; but I prefer to rest my dissent on the ground already stated.

The judgment should be reversed and the complaint dismissed.

RICH, J., concurred.

Judgment affirmed on reargument, with costs.