NESO D. WESSELS, Individually and as Administrator of the Estate of HELENE C. WESSELS, Deceased, et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28899.)

Court of Claims, February 24, 1949.

*Harold L. Moskowitz* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson, Harold S. Coyne* and *Donald Kramer* of counsel), for defendant.

LOUNSBERRY, P. J. The claims decided herewith, arising from a collision, are by Virginia L. Wessels for injuries sustained, and by her husband, Neso D. Wessels, individually, for property damage and for loss of services of his wife, and, as administrator, for injuries and the resulting death of his daughter, Helene C. Wessels.

Mr. Wessels maintained a greenhouse business at Sidney and Deposit, assisted by his wife and daughter. On December 23, 1947, at about 10:00 o'clock in the morning, Mrs. Wessels was driving her husband's 1947 Pontiac sedan southerly along State Highway Route No. 8 from Sidney to Deposit to deliver flowers. Her daughter was riding in the back seat. It was snowing and some two inches or more of snow had accumulated on the road.

Mrs. Wessels had reached a point, about sixteen miles south of Sidney, where the highway proceeds downgrade and at the same time curves to the right. As she was proceeding down the grade she saw a State highway patrol truck approaching from the opposite direction on her side of the road. Fearing a

collision she sounded her horn, shifted into second gear, applied her brakes and swerved to the left. The truck meanwhile was returning toward its right and the vehicles collided on Mrs. Wessels' left side of the road.

At a point near the south end of the grade, there is a bridge on the east side of the road over which a county highway intersects with Route No. 8. Ivan J. Axtell, Jr., testified that just before the accident he drove his two-wheel wagon and team of horses onto Route 8 from the county highway and turned north, noting as he did so the State truck approaching from the south at about twenty-five miles per hour. He then saw the Wessels car come into sight from the north, about 300 to 350 feet away, and looking behind him saw that the truck was about to pass him. He brought the team to a stop at the extreme right side of the road at a point about 110 feet north of the bridge. The truck swung wide around him, continued northerly and began to swing back to its own side. The two vehicles collided at a point about 140 feet north of the stopped team and wagon, the right front end of the truck striking against the right side of the car. At the moment of the collision, according to witness Axtell, substantially verified by witnesses who examined the tracks, the two front wheels and the right rear wheel of the truck had returned to the right-hand side of the road, while the Wessels car had crossed to its left-hand side. The force of the impact drove the truck backward against the guardrail to its left, and the car came to rest against the opposite guardrail.

There is considerable dispute as to the amount of sight distance between the two vehicles, but it was at least 500 feet, and probably more. Neither driver seems to have made full use of it. Mrs. Wessels testified that she did not see the approaching truck until she reached a Route 8 sign on her right side of the road, and that she did not see the team at all. The distance from the Route 8 sign to the team was not more than 350 feet, and it is apparent from the maps and photographs that she should have been able to see both it and the truck from a point at least 100 feet farther north. The truck driver testified that he did not see the approaching car until he was opposite the team, and, again, it is apparent from the exhibits and testimony that he should have seen the car before he began to pass the team.

Upon all the evidence we are convinced that the driver of the State truck was negligent. He was thoroughly familiar with the road and knew that there was a hill and curve ahead. He also

knew that a solid white line, forbidding passing, began 196 feet north of the bridge, and that he was very close to it by the time he drew opposite the team. He should have seen the approaching car before he attempted to pass the team and should have realized that it would be difficult for an approaching vehicle coming downhill on a slippery road to slow down sufficiently to afford the truck safe passage between it and the team. Likewise, he should have realized that on a slippery road going uphill with a heavy load he could not hope to avoid a collision by quickly accelerating his own speed. Furthermore, it is apparent that, although the team had stopped and had pulled to the extreme right, giving him all possible room, he made no effort to return quickly to his own side of the road but proceeded in a wide swing which had not yet brought him completely to his own side after he had traveled about 140 feet. He made no attempt to use his brakes but, instead, shut off his ignition, apparently depending on engine compression to slow the truck, when he saw that a collision was likely.

We are also convinced that Mrs. Wessels was negligent. As we have already pointed out, she failed to notice the approaching truck when it first appeared in her line of vision. Evidently, she also failed to notice that while the truck was on her side of the road it was actually bearing back toward its own side, for instead of keeping close to her own right she deliberately turned left, thus crossing directly into the path of the truck. Further, we are of the opinion that she was traveling considerably faster than she supposed. She stated that she was proceeding at twenty-five miles per hour when she first saw the truck and that she reduced her speed to about ten miles per hour just before the collision. The violence of the impact of the two vehicles hardly bears out this statement, however. The car was virtually demolished, and the heavy truck was driven backward, although it was in forward gear. It seems likely from the force of the impact and from the distance which her car covered that her speed at the top of the grade was nearer the forty miles per hour to which the truck driver testified.

The claimants contend, of course, that Mrs. Wessels was confronted with an emergency which would excuse a possibly erroneous decision on her part. We recognize the principle involved but do not believe that it is applicable under the circumstances of the case. Had Mrs. Wessels simply attempted to slow down and been thrown into a skid by reason of the road conditions, she might not have been chargeable with negligence. What actually occurred, however, was that she deliberately

drove to the left and into the path of the truck. From her own testimony, it would appear that she swung left the moment she saw the truck, which might have been an understandable reflex action on her part, but the tracks of her car show that she actually drove straight down her own side of the road for about 150 feet and then turned sharply to the left not more than fifty feet from the point of collision. By that time she should have realized that the truck was actually returning to its own side of the road, and that there was no occasion for her to turn left in front of it.

This conclusion bars recovery by the claimant, Virginia L. Wessels, because of her contributory negligence, and, since she was acting as agent for her husband in connection with his business, it also bars his claim for the loss of her services, her medical and hospital expenses, and the damage to the car. (*Lowell* v. *Williams,* 183 App. Div. 701.) The latter item is also barred by reason of assignment of the claim therefor to an insurance company, which paid Mr. Wessels his loss. There is absolutely no evidence of negligence on the part of the daughter, however, and therefore, the claim for her injuries and resulting death and her medical, hospital and funeral expenses must be allowed on the ground of the negligence of the State. (*Laitenberger* v. *State of New York,* 190 Misc. 633.)

The evidence shows that Helene C. Wessels was a normal girl, twelve years of age, with a life expectancy of 47.44 years, and that, although young, she was a capable helper in her father's business after school hours and during weekends and vacations. He valued her services at $30 per week. She sustained extensive and painful injuries from which she died two days after the accident. Her medical, nursing and hospital expenses totalled $262.55, and her funeral expenses amounted to $491.17. We award these special damages, together with $1,500 for her conscious pain and suffering, and $8,500 for her wrongful death, together with interest on the sum of $9,253.72 from December 25, 1947, the date of death.

The claim of Neso D. Wessels as administrator of the estate of Helene C. Wessels, deceased, was duly and timely filed and has not been submitted to any other court or tribunal for audit or determination.

The claims of Neso D. Wessels, individually, and Virginia L. Wessels are dismissed.

Findings in accordance with the above memorandum may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision.

Let judgment be entered accordingly.