PHOEBE NYE, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28817.)
ERNEST NYE, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28818.)

Court of Claims, August 23, 1949.

*John T. Ryan* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Harold S. Coyne* of counsel), for defendant.

LOUNSBERRY, P. J.   On the afternoon of September 22, 1947, employees of the New York State Department of Public Works were engaged in grading the south shoulder of a portion of the Cortland-Truxton highway, known as New York Route No. 13, about a mile and a half east of Cortland.  In this area said highway runs generally east and west, contains no sharp curves, and is substantially level.  Sight distance is adequate. The pavement is twenty feet in width consisting of two concrete lanes.

The procedure involved cutting down the level of the south shoulder by use of a grader and pushing the excess sod, dirt and gravel onto the south lane of the pavement.  By about three o'clock that afternoon, a stretch of some 700 to 1,000 feet of the south lane had been almost entirely covered with such material twelve to fifteen inches deep.

At this juncture the following events occurred: A . Dodge truck operated by William L. Van Donsel, proceeding easterly toward Truxton, came to the westerly end of such pile of dirt and, in order to proceed farther, swung over into the north lane, which was of course its left-hand lane.  At the same time, Ernest N. Barrows, operating a large Brockway truck westerly toward Cortland, approached the east end of the pile of dirt, observed the oncoming Dodge truck, and stopped the Brockway in the middle of the north lane at a point which may have been anywhere from twenty to fifty feet easterly from the end of the dirt.  His motive was to allow the Dodge truck time to pass the pile and return to its own south lane.

Meanwhile, the claimant, Ernest Nye, with his wife, Phoebe Nye, as a passenger, was operating his Model A Ford westerly toward Cortland behind the Brockway truck.  While still some ten to fifteen rods, according to his own testimony, behind the Brockway truck, he noticed that it was stopped and he also

noticed the pile of dirt, although he did not then know the cause of its existence.  He brought his car to a stop about ten feet behind the Brockway truck.  The Brockway was a van truck, some eight feet in width and ten feet in height, making visibility of the road ahead virtually impossible for Nye, who, after waiting about one minute, backed his car about ten feet and then pulled out to pass the Brockway.  Immediately upon turning into the south lane beside the Brockway, he encountered the Dodge truck, which had just returned to its own lane, and the vehicles collided.  The Nye car was driven backward, coming to rest diagonally across the middle of the pavement, while the Dodge truck went off the south shoulder of the highway and tipped over.  Mr. Nye received some injuries, his car was extensively damaged, and Mrs. Nye was severely injured.

It is undisputed that, although the highway work had resulted in a one-way traffic condition, the State had stationed no flagmen to warn or guide traffic, and had placed no signs giving notice of such one-way traffic condition.  The driver of the Brockway, and also his passenger, testified that the only warning he noticed was a small " Men Working " sign on the south shoulder at a point slightly ahead of their stopped truck.  The foreman of the maintenance crew stated that such sign was placed some 300 feet east of the end of the dirt, and the State Trooper subsequently found such sign about in that location.  The court, believes, however, that the disinterested witnesses in the Brockway truck were best able to locate the sign, and accepts their statement as to its position.  The grader operator insists that he put out a " Grader Working " sign about 300 feet east of the end of the dirt but no one else, even including the other State witnesses, saw such a sign.

The exact location of the " Men Working " sign is actually of little importance.  In our opinion, such sign, wherever located, was wholly inadequate to warn of the condition to be encountered.  Even the addition of a " Grader Working " sign would not cure the defect.  In this respect, the State clearly failed to meet its legal duty to erect adequate warning signs of a dangerous condition sufficient for the purpose intended.  It was the duty of the State " to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care." (*Snowden* v. *Town of Summerset,* 171 N. Y. 99, 105.)  " The State must erect warning signs where necessary.  If their absence is a proximate cause of injury to persons or property, the State is liable." (*Ziehm* v. *State of*

*New York,* 270 App. Div. 876; *Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Dawley* v. *State of New York,* 186 Misc. 571.) The situation clearly required at least signs indicating the necessity of one-way traffic, or better, flagmen to warn and guide traffic.

The failure of the State to give such warning and to take such precaution set in motion the chain of events which led to the collision. Conceivably, it might have occurred in spite of suitable precautions, but, in such case, the State clearly would have been absolved of any responsibility. In this case it is not. Had there been a flagman or a clear warning sign, Mr. Nye would either have been prevented from attempting to pass the Brockway truck when the other truck was approaching, or at least he would have been put on notice that all traffic was operating on one lane, and that there might well be another vehicle approaching him on the same lane occupied by the Brockway.

It does not follow, however, that Mr. Nye was free from fault. The evidence indicates that he was unobservant. He had noticed the pile of dirt from a considerable distance, but seems to have made no effort to ascertain what the resulting situation on the highway might have been. He did not see the Dodge truck until it actually collided with his car, although it must have been visible as soon as he started to round the Brockway. He was traveling very slowly, and could have stopped almost immediately had he noticed the oncoming truck as soon as it came into his line of vision. Such action on his part might or might not have avoided the collision, but at least he would then have done all that could have been expected of a reasonable person under the circumstances. Actually, he appears to have proceeded to pass without a thought concerning the blocked condition of the left-hand lane of the road ahead of him, or the possibility that under such circumstances there might be a vehicle approaching on the other lane, and evidently without so much as a glance ahead of him toward any such vehicle.

The operator of a motor vehicle undertaking and attempting to pass another vehicle ahead of him is under a clear duty to take care to make certain that the roadway ahead is clear so that he can pass safely. (*Pratt* v. *Burns,* 189 App. Div. 33; *Wyka* v. *Benedicks,* 41 N. Y. S. 2d 127, affd. 266 App. Div. 1025, motion for leave to appeal denied 267 App. Div. 773, appeal dismissed 292 N. Y. 551; *Marcus* v. *Sergison,* 43 N. Y. S. 2d 194.)

For the reasons given, we are of the opinion that the claimant, Ernest Nye, was careless in observing an obviously reasonable duty. Therefore, while we have found the State to be negligent in this situation, we find that the claimant, Ernest Nye, was

guilty of contributory negligence, and that his claim herein must be barred for that reason.

There is no evidence, however, that his passenger, the claimant Phoebe Nye, was in any way guilty of contributory negligence. It is the settled law of the State of New York that the negligence of the operator of a motor vehicle is not imputable to his passenger. We find that the negligence of the State of New York, its officers and employees, was the proximate cause of the injuries sustained by the claimant Phoebe Nye, and that claimant is entitled to recover. (*Sporborg* v. *State of New York,* 226 App. Div. 113; *Peek* v. *State of New York,* 137 Misc. 840; *Gibson* v. *State of New York,* 173 Misc. 893; *Nelson* v. *Nygren,* 259 N. Y. 71; *Walter* v. *State of New York,* 187 Misc. 1034; *Wessels* v. *State of New York,* 194 Misc. 317; *Lovejoy* v. *State of New York,* Claim No. 28475.) The claimant, Phoebe Nye, as a result of said accident, was rendered unconscious, and was removed by ambulance to the Cortland City Hospital, whereupon the first examination by Dr. Kelley disclosed that she was in a semiconscious condition, was bleeding from her right ear, had a cut under her chin about two inches in length exposing the jawbone beneath, and a bruise on the back of her left hand and left wrist. A later examination and X rays indicated no fracture of the skull, but did show a fracture of the 1st, 2d, 3d, 5th and 7th ribs on the left side, and a fracture of the clavicle, which was a " heal fracture ". The claimant was hospitalized for approximately one month, during the majority of which time she was confined to her bed. During the first four days of her confinement in the hospital, she suffered extreme pain and was subject to vomiting spells.

When the claimant was discharged from the hospital, she returned to her home. She continued to suffer pain in her head and neck for about six months, and was unable to perform her household duties. At the time of the trial, she still complained of pain and inability to move her neck and head from side to side. Dr. Kelley testified that in his opinion she had a 20% loss of motion in her neck and that she would have recurrent trouble with her neck. The State produced no. medical proof.

The claimant, Phoebe Nye, as a result of said injuries, pain, suffering and disability, is entitled to recover from the State of New York the sum of $7,500 damages.

Findings in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision herein. Let judgment be entered accordingly.