CHESTER L. MILLER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30245.)

EDWARD STUKEY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30246.)

DONALD E. STUKEY, an Infant, by EDWARD STUKEY, His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30247.)

BLANCHE BRODZIK, as Administratrix of the Estate of FRANCIS SAWNER, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30248.)

Court of Claims, April 9, 1952.

*Salvador J. Capecelatro* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

YOUNG, J. New York State Route 49 runs substantially in an east-west direction between the cities of Utica and Rome in Oneida County. A short distance west of the intersection of Route 49 with a road leading north to Gate No. 2 of the Griffiss Air Base the highway descends at a grade of from five to six percent and makes a curve to the south on the downgrade which curve has a radius of 955 feet. North of the highway and west of the intersection the terrain slopes down toward the road and in this area the State has installed a system of underground drainage pipes which lead into a six-inch vitreous clay pipe running under a concrete gutter which parallels the north side of the highway for a distance of about 110 feet west of the intersection. The water collected in the six-inch pipe flows into an open ditch on the north side of the highway about 200 feet from the intersection.

Early in the afternoon of January 14, 1950, the open dirt ditch became clogged up with debris. The water overflowed and ran out over the highway in a fan-shape pattern to the south and west because of the direction of decline and the banking on the curve.

On January 11, 1950, a safety inspector for the State Department of Public Works noticed water flowing over the highway at the same point and in the same manner and called it to the attention of his superiors. It was observed at that time that the action of cars driving through the water would cause it to freeze and form slush in the center of the road and on the sides.

On the morning of January 12, 1950, an Oneida County maintenance crew observed the ice and, after six hours of labor, removed it, using pickaxes and 1,200 pounds of calcium chloride. The crew then placed red warning flags at both ends of this section of the highway. While they did remedy the situation that was found there on that date, the crew made no attempt to discover the reason for the water being on the road and made no effort to insure against recurrence except that they again visited the scene on the mornings of January 13th and 14th. On this latter morning they removed the warning flags.

In the afternoon of the 14th the water again overflowed as described above and toward the latter part of the afternoon reached a depth of about two inches on the highway.

Shortly after four o'clock in the afternoon of January 14th, Chester Miller was driving his car easterly from Rome on Route 49. With him were Francis Sawner, Donald Stukey and John Terns. Their destination was Stukey's camp which was located off the highway, east of the intersection. The highway was dry until the car reached the point west of the intersection where the water was flowing across it.

Sometime after dark, at about seven-thirty in the evening, Miller started back to Rome with the same occupants in his car. The highway was dry until he came to the section above described where the car began hitting bumps, the steering wheel snapped from side to side and Miller found it impossible to steer. The rear of the car struck a hard object in the middle of the road, started to skid and went out of control. The car went down an embankment on the south side of the highway and collided with a tree, injuring Miller and Stukey and causing the death of Francis Sawner.

The water which had been flowing across the road in the afternoon had, in the evening, frozen into a formation of ruts, ridges and bumps and it was this ice formation that had caused the accident.

While the State is not an insurer of the safety of its highways and while it is not required to use the limits of human ingenuity in its maintenance work, it does have the burden of exercising reasonable and ordinary care (*Sweet* v. *State of New York*, 195 Misc. 494) and it must guard against such dangers as can be reasonably anticipated. (*Snowden* v. *Town of Somerset*, 171 N. Y. 99.)

The State did not exhaust the burden of reasonable care when it removed the ice on the road on January 12th and revisited the scene on the 13th and 14th. Common sense and ordinary prudence should have prompted the maintenance crew to investigate further. If they had done so they would have determined that the water on the road was caused by the overflow of the clogged drainage ditch. If this simple precaution had been taken the clogged drainage ditch as well as the road would have been kept under observation and the accident would have been prevented. It is not enough for the State to take remedial action against the ice found on the highway. It must also take steps to prevent recurrences. (*Dunn* v. *State of New*

*York,* 52 N. Y. S. 2d 128; *Goldfarb* v. *State of New York,* 178 Misc. 180, affd. 264 App. Div. 976.)

The negligence of the State was not the sole proximate cause of this accident as it could not have occurred without the negligence of the driver, claimant Chester Miller, contributing thereto. Miller had knowledge of the water on the road as he had driven through it about three and a half hours before the accident. It being winter, the driver could logically expect that as night approached and the temperature became lower, the water would turn to ice. There is no evidence that Miller took any precaution to meet the dangerous situation which he knew was existing at that place on the highway.

His claim is dismissed in an accompanying decision.

There is no finding of negligence on the part of the other occupants of the car and the negligence of the driver is not imputable to them. (*Worden* v. *State of New York,* 221 App. Div. 671.) Awards are made to the other claimants in accompanying decisions.