RALPH F. MOSHER, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 30616.)

Court of Claims, September 12, 1953.

*Philip P. Proller* and *James F. Carroll* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Donald C. Glenn* of counsel), for defendant.

MAJOR, J.   This is an action brought against the State of New York for personal injuries, pain and suffering of the claimant, and damages to his automobile, because of the alleged negligence of the State of New York in the construction and maintenance of the intersection of Route 9-K and Route 9, just south of the village of Lake George, New York.

On March 17, 1950, at about 11:00 P.M., the claimant, after working during the day in a paper mill, met a friend, Olin B. Rowe, who also had worked in the paper mill that day, in a grill in Corinth, New York.   Together they drove about seven miles to Hadley, New York, where they participated in a square dance. They left the dance about 1:30 A.M., and went to the Lake Bar and Grill at Luzerne, which is contiguous to Hadley.   At this place, they met three other acquaintances, had a bottle of beer and something to eat.   They all left the grill at about 2:30 A.M., to drive two of the acquaintances to their homes in Warrensburg, New York, which is about twenty-five miles northerly from Luzerne.

It had been snowing throughout the evening up to and including some time after the accident. It was a heavy, wet, large, sticky flake, snow. There were from four to six inches on the roadbed, and the road was very slippery. On the trip to Warrensburg, claimant was driving the automobile, which he owned; and, after driving about four miles, he requested his friend, Olin B. Rowe, to drive the car because the claimant was tired. From then on and to the time of the accident, Rowe, with the claimant owner thereof sitting on the right side of the front seat, drove the car. Rowe was not familiar with the highway, having driven over it once during the daytime and as a passenger with someone else at night. He testified that he relied on the claimant for directions. This operation was on Route 9-K. Visibility was poor and the approximate maximum was about 100 feet. The large wet snowflakes were falling on the windshield, temporarily sticking, but being melted and wiped off by the windshield wiper.

About six miles farther on from the place where claimant discontinued driving, Route 9-K forms a '' T '' intersection with Route 9, the former running east and west, and the latter running north and south. Route 9 is thirty feet wide at the intersection. Route 9-K is generally twenty-two feet wide, but at about 120 feet easterly of the intersection, it begins to widen from twenty-two feet to a width of 175 feet at the intersection. The area of the intersection had been plowed previous to the storm, but was not plowed during the storm.

Claimant's car was driven at a speed of about twenty-five miles per hour, and this speed continued to the time of the accident. Claimant and those of his passengers testifying, said that they saw no signs as they drove along that night; that the snowbanks were high. The evidence shows that there were adequate signs along the southerly side of Route 9-K, to warn of the approaching intersection, if the signs were not covered with snow. There was no positive evidence as to whether or not the signs were or were not covered with snow before the snowstorm that night, or whether such storm covered the warning signs. Likewise, this applies to the double arrow sign across and on the westerly side of Route 9. For several hundred feet before arriving at the intersection, there was a 5% grade on Route 9-K, which flattens out to a 1.8% grade at a point substantially 120 feet westerly from Route 9.

Claimant testified that he knew he was approaching Route 9, and knew that his driver, Rowe, was not too familiar with the road, but that he did not tell Rowe of the approaching intersec-

tion and gave him no directions whatever. Mr. Rowe testified that he could see approximately 100 feet ahead of the car as he drove along. As he neared the intersection, he was not aware of it. He testified in his own words: " A. Well, as we neared the intersection, of course I wasn't aware of it. The first thing I knew I looked directly in front of me and I see that the front wheels are practically in the other road. Well, the first thing I thought of was trying to get around the corner, you know, go left even if I go around it backward or any way so I wouldn't hit the guard rails or whatever there was in that embankment in front of us." Mr. Rowe also testified that he applied his brakes when he was approximately thirty feet westerly of the east line of Route 9, and after attempting a left turn, his car skidded straight ahead into the guard posts, demolishing two of them and damaging claimant's car.

Every owner of a motor vehicle is liable and responsible for the negligence in the operation of same in the business of such owner by any person using same with the permission of the owner. (Vehicle and Traffic Law, § 59.) Where the claimant-owner of the automobile seeks to recover damages to his person or car, the negligence of the driver should be imputed to the owner when present in the car. (*Gochee* v. *Wagner,* 257 N. Y. 344.)

The part of section 95-d of the Vehicle and Traffic Law, requiring that signs, signals and markings ordered or directed by the State Traffic Commission shall be plainly visible at all times for a distance of at least fifty feet, refers to normal conditions only, and cannot be strictly construed under conditions whereby compliance is impossible, such as continuing snowfall, smoke, fog, etc. It is the duty of the State, however, to make such signs visible as soon as opportunity permits and is normally practical in the efficient and diligent operation of the department concerned. In the case of *Pope* v. *State of New York* (198 Misc. 31, 36, affd. 277 App. Div. 1157) Judge GORMAN held that " Warning signs only serve to notify persons of an existing danger. If the danger is known, a warning sign is useless." The weather conditions on the morning of the accident were abnormal, and it was incumbent upon the claimant and his driver, Rowe, to drive with caution commensurate with the danger. In *Elansky* v. *State of New York* (133 Misc. 331, 334) Judge BARRETT held: " It is true that claimants were driving in a thick fog, but the State does not assume any insurance liability to travelers on the highway attempting to proceed through a fog. When the necessary precautions are provided for those using the road under ordinary

conditions in the nighttime, exclusive of fog, the State has done all that it is required to do. (*Johnson* v. *State,* 104 Misc. 395).''

Upon all of the credible evidence submitted in this case, it is our opinion that the warning signs placed along the route traveled by the claimant's automobile were adequate and proper under ordinary conditions. In this case, whether in sight or obscured, such signs were not the proximate cause of this accident. This accident and the claimant's resulting damages were not caused by the negligence of the State of New York. The manner and conditions under which claimant's automobile was being driven at or before the accident, would not be helped or improved by the visibility of any signs. It was the duty of the claimant to see that the driver of his automobile drove the same with extreme caution and under control, at a proper rate of speed so as not to endanger the life or property of any person, nor to operate said automobile at a rate of speed greater than will permit such person to bring the vehicle to a stop without injury to another or his property. (Vehicle and Traffic Law, § 81, subd. 10; § 56.) This he did not do and, therefore, claimant is guilty of contributory negligence.

In this case, we find that the driver of the claimant's automobile was guilty of negligence and carelessness in the operation of the same, and such negligence was the proximate cause of this accident. The claim herein must be dismissed.

The foregoing constitutes the written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.