Richard S. Heller, J.
These two claims arising out of the same motor vehicle accident, were tried together.
The claimant and the decedent who was claimant’s wife, resided on Route 20 about three and a half miles east of the intersection of Route 20 and Route 12, which is a State highway. About 9 or 9:30 in the evening of March 15, 1954, claimant and his wife drove to the Hotel Waterville in Waterville, New York. They remained in the bar at the Hotel Waterville until 10:30 or 11:00 p.m. when they went to the Hotel American in Waterville. About midnight at the Hotel American, claimant received a telephone call from his daughter-in-law who was at claimant’s home, reporting that claimant’s sister was in serious condition and claimant was wanted at the hospital for blood typing for a transfusion which might be necessary. While at the Hotel Waterville and Hotel American, claimant drank about five glasses of beer.
After receiving the phone call, claimant and his wife left the Hotel American and returned about 41/2 miles to their home and checked with claimant’s daughter-in-law concerning the message received by her. Claimant and his wife then left their home for Utica driving west on Route 20 covering the same 41/2 miles which they had just traveled eastward, and turned *246 north on Route 12 at Waterville. Claimant made some 30 or 40 trips a year between his home and Utica using Route 20 and Route 8 most of the time and Route 20 and 12 only 5 or 6 times a year. Route 8 was preferred because it was a better road with fewer hills and curves and less snow and ice in the winter months.
During the day of March 15 it had been snowing and on this particular night the weather was clear, very cold and windy. Road conditions were generally bad due to the snow, wind and cold. On March 15 the maintenance crew of the Department of Public Works was employed in sanding 13 miles of Route 12 including the place where this accident occurred, from 6:00 a.m, to 2:30 p.m. and from 5:00 p.m. to 9:00 p.m.
As claimant drove north on Route 12 with his wife riding in the front seat beside him, they came to a curve to the right. This section of the highway was built in 1928 according to good construction standards. The length of the curve was 498 feet and it was about a 10-degree curve. The pavement was 22 feet wide with 7-foot shoulders on each side. Going north on the road there was a 5.3% downgrade which leveled off about 130 feet south of the curve. For about the first 300 feet of the curve there was a 1.7% upgrade and then for the balance of the curve there was a downgrade of about 1.12%. The road was properly banked with the left-hand side going north varying from 2.1 to 2.2 feet higher than the right-hand side. The terrain west of the 7-foot shoulder was either level or sloping-down away from the road. To the east of the pavement, there was a 7-foot shoulder and then a ditch and a bank 4 or 5 feet high. The shoulders of the road sloped 1 inch per foot downward away from the pavement.
Approaching- the curve from the south there was a sign warning of the curve to the right. Although the weather was clear with no evidence of any obstruction of vision, claimant did not see this sign. Claimant’s car was traveling at 30 to 35 miles per hour as he entered the curve. On the curve claimant’s car left the pavement and traveled up the 4- or 5-foot bank on the east side of the road and then northerly along the top of the bank coming to rest about 165 feet from the point at which it left the pavement. Claimant was thrown clear of the car and suffered quite extensive injuries and his wife was pinned under a door of the car and died as a result of her injuries.
There is some conflict in the testimony as to the precise condition of the road surface where the accident occurred. Certain facts, however, were indisputably established by the testimony. There was either snow or ice or both on at least a portion of *247 the pavement at this curve. This condition was generally typical of the condition of the highway. Claimant himself testified that as he traveled the highway, ‘‘ I ran onto spots where the wind had blowed the snow into the road and then I would go along and the road was seemingly bare. ” At a motor vehicle hearing held in connection with this accident the claimant testified, “ As I say, it had been drifty. If I hadn’t had to go to the hospital, I never would have drove.”
The curve had been sanded twice on March 15 prior to 9:00 p.m. During the day of March 15 the temperature had risen to about 34 degrees which was sufficient to start melting any ice or snow on the highway but by 9:00 p.m. the temperature had dropped to about 20 degrees and with the wind, ice had again formed in many places on the highway.
The obligation of the State in regard to construction and maintenance of highways is to provide a reasonably safe road in accordance with terrain, weather and traffic conditions to be reasonably anticipated. Bisks in automobile travel are unavoidable and the State is not an insurer of the safety of the users of its highways. Boads cannot always be straight and level and curves are a source of potential danger, particularly in areas where snow and ice are a known and usual part of the winter months. Ordinarily the obligation of the State is discharged when the users of the highway, exercising reasonable care, can and do travel over it safely. (Boyce Motor Lines v. State of New York, 280 App. Div. 693, affd. 306 N. Y. 801.) The exercise of reasonable care in maintenance does not require the State to go to the limits of human ingenuity to accomplish safety of the highway. (Stukey v. State of New York, 202 Misc. 1029, affd. 281 App. Div. 1005.)
The evidence here establishes that the condition of this curve was due to weather conditions over which the State had no control. The measures taken by the State in sanding this road twice on March 15 appear to have been reasonable and proper under the circumstances. The evidence indicating that there was snow or ice on this curve for a period of some 5 or 6 days prior to this accident is not sufficient to establish a long existing dangerous condition for which the State was required to take any further steps. The record affirmatively establishes that it had been snowing on March 15 and that on the night of March 15 and morning of March 16 it was cold and windy. Furthermore, it is quite clear that at least a portion of the pavement at this curve was bare of snow or ice and it is significant that the bare portion was on the easterly side of the highway which varied from 2.1 to 2.2 feet lower than the westerly *248 side of the highway. There is no evidence to establish the conditions under which the snow and ice were upon this curve or the precise location on the pavement in the days prior to March 15.
Likewise the testimony concerning the condition of this curve in previous years and to the effect that an automobile had left the curve and gone into the ditch in 1952 and 1953 was insufficient to establish that this curve was in any way dangerous except as it was made so by the vagaries of weather.
There was clearly no negligence in the construction of the road. The curve had a 22-foot pavement properly banked, built in accordance with good construction standards in 1928. It did not appear that there was any faulty drainage resulting in an accumulation of snow and ice for which the State could be chargeable. The evidence establishes that the lower portion of the pavement on this curve was free of both snow and ice and such a condition would not be consistent with any defective drainage condition. Likewise the evidence is insufficient to establish that the drifting of the snow was so consistent or of such a pattern that the State was required to take or could have taken any reasonable steps to prevent an accumulation of snow on a portion of this curve during the Winter months.
The proximate cause of this accident was not the negligence of the State but was rather the existing weather conditions and the negligence of the driver of the automobile. The weather conditions and the general condition of roads in the area were clearly known to the claimant. It therefore does not appear that any additional warning signs would have been effective to prevent this accident even if the conditions were such as to have required such additional warning signs. (Pope v. State of New York, 198 Misc. 31, affd. 277 App. Div. 1157; Mosher v. State of New York, 204 Misc. 580.)
We find that claimants failed to establish any negligence on the part of the State. The injuries here were the result of the weather conditions over which the State had no control and in regard to which it exercised reasonable precautions to provide for safe travel.
In regard to the claim of F. Louis Bird, it is quite clear that he is chargeable with contributory negligence. Such contributory negligence, however, is not imputable to the decedent and there was no showing that the decedent was in any way negligent. Before there can be any recovery on the claim of F. Louis Bird as administrator of the estate of Floy M. Bird however, the State must be found to have been guilty of negligence as a contributing cause of the accident. The evidence does not *249 establish any such negligence on the part of the State and the claim of the administrator must therefore also fail.
The motions for dismissal made at the conclusion of the trial by the Attorney-General are granted.
Let judgments be entered accordingly.