Henry A. Hudson, J.
The defendants and each of them have moved for an order dismissing the plaintiffs’ complaints and for summary judgment pursuant to rule 113 of the Rules of Civil Practice on the ground that the plaintiffs’ actions are without merit and that the plaintiffs’ causes of action should be dismissed upon the ground, first, that the defendants and each of them were not negligent in any manner which in any way was the proximate cause of the injuries to or damage sustained by either of the plaintiffs and upon the further ground that any injury or damage sustained by either of the plaintiffs *662 was caused solely by the contributory negligence of the plaintiff, John Evans.
The injuries for which the plaintiff, John Evans, and the damage for which the plaintiff, Nicholas F. Domenico, Sr., doing business as F. Domenico & Sons, seek to recover, occurred as the result of a collision between the panel truck owned by Nicholas F. Domenico, Sr., and driven by the plaintiff, John Evans, and the automobiles owned by the defendants Zimmer and Bundy Concrete Pipe Co. Such truck was being used in the produce business of the plaintiff, Domenico, to deliver bananas and other produce in communities located on Route 12-B in Lewis County, New York. The collision occurred between 9:30 and 10:00 a.m. on the morning of March 16, 1959 at a point on State Highway, 12-B, in Lewis County approximately one and one-half miles south of the hamlet of Martins-burg, New York. The collision occurred during a severe Winter storm which involved both blowing and falling snow at a point where a number of automobiles had become stalled or stopped behind one another. The consensus of opinion of all of the drivers appears to be that driving conditions were hazardous in that there would be intervals of very limited visibility and at times no visibility. It also is agreed that there were intervals when there would be substantial amounts of snow in the road particularly where there were high snowbanks on the side where drifting and blowing snow would fill in the road. The accident itself occurred at one of these points, there being general agreement that the road was filled with drifting snow to the extent that some of the automobiles involved became stuck in the drifting snow. All of the defendants, as well as the plaintiffs, have been examined before trial and their testimony has been submitted on this motion. The accident, which frequently is described as a chain reaction accident, occurred in the following manner.
The automobile of the defendant, Frank Bennett, traveling at a very slow speed came upon a house trailer which was stalled in a snowbank in the road and narrowly avoided colliding therewith before being brought to a stop. An automobile being driven by the defendant, Fox, came to a halt a short distance behind the Bennett vehicle. Mr. Fox observed in his rear-view mirror an automobile driven by the defendant, Baker, approaching from the rear at a speed which indicated a collision. The Baker vehicle collided with the Fox vehicle driving it ahead into the Bennett vehicle which in turn was driven almost into the house trailer. The occupants of the Bennett, Fox and Baker vehicles got out of their respective vehicles and discussed the *663 accident. At about this time a vehicle owned by the defendant, Bundy Concrete Pipe Company, and being driven by one Mario Grasso, collided with the rear of the Baker vehicle. Mr. Grasso got out of his car, put on his rear directional light and proceeded ahead to discuss the situation with the occupants of the Bennett, Fox and Baker vehicles. There is some question in which vehicle these conversations took place but the drivers apparently got into the vehicle to get out of the storm. At about this time the vehicle owned by the defendant Louis Zimmer, who was a passenger therein, and driven by his 17-year-old brother, came upon the scene. In seeking to avoid a collision with the Bundy vehicle, he pulled to the left and became stalled in the snow alongside of the Bundy vehicle and to its left, in other words in the opposite driving lane. The Zimmers got out of their car and attempted to back it up but found it was stuck so that it could not be moved and they proceeded ahead to join the other defendants. At this point, the panel truck driven by the plaintiff, John Evans, and owned by Nicholas F. Domenico, Sr., appproached the scene and came in contact with both the Zimmer vehicle and the Bundy Concrete Pipe vehicle with such force that the plaintiff, Evans lost consciousness and remained unconscious until he was removed by the others present, to a farmhouse some short distance away. He sustained injuries, as a result of which, he was hospitalized. The plaintiff, Evans, was the only occupant of the panel truck. He testified on the examination before trial that he had made deliveries along the road north from Htica; that after leaving Turin, which is some five miles south of the scene of the accident, he encountered driving conditions which involved periods of clear road and visibility and periods of blinding snow with little or no visibility, when driving was accomplished by watching the side of the road until another interval of clear road or visibility was attained. Mr. Evans testified that as he approached the scene of the accident, the road ahead was obscured by blowing and drifting snow; that he could only see to drive by watching the side of the road and that he could not see ahead; that he was driving at about 20 or 25 miles per hour and that suddenly everything went blank and that he recollected nothing until he awoke lying on the floor of a farmhouse. His testimony in this respect is as follows, at pages 4-6 of the transcript :
‘ ‘ Q. Will you tell us what happened? A. I was driving along, 20 or 25 miles an hour, I guess, and I was watching the side of the road. When I hit the snow squalls I watched the side of the road, from the front to the side generally — I followed the *664 road pretty good, and the next thing I knew I was in the farmhouse on the floor. I don’t know — I didn’t see anything. That is all there was to it.
* # *
“ Q. You remember nothing about this accident? A. No, sir.
“ Q. You don’t recall driving along and seeing a car ahead of you? A. No, sir.
“ Q. As I understand it, you saw none of the vehicles which were alleged, at least, that were present in the area of the accident on this morning? A. No, sir. They didn’t have no flares or anything out.
“ Q. As you drove along, you did not see a ear in the road ahead of you? At the place where this accident happened, is that correct? A. Yes.
* * #
“ Q. Did you see any of these cars? A. I just was going along about 20 or 25 miles an hour, taking my time, and the snow squalls were coming up, and the first thing I know, I was in the farmhouse on the floor, that’s all I know.”
And again on cross-examination, on pages 21-22:
‘ ‘ Q. Have you any recollection, immediately before the accident occurring, whether or not a squall arose at that time? A. No, because it was on and oíf. I was going along the road, and I was going slow enough to stop and all of a sudden I wound up in the farmhouse.
“ Q. In going along, before the accident, could you see these two truck lengths ahead of you, or did a squall occur at that time, if you know? A. I can’t say.
“ Q. Do you have any recollection at all of applying your brakes? Immediately before the collision occurred? A. No. Because I didn’t see nothing.
“ Q. Did you feel the impact yourself? A. No, just like oblivion. There was nothing.
“ Q. There was a complete lapse of recollection and observation on your part, from the time you were going along at 25 to 30 miles an hour, until you found yourself in the farmhouse, is that correct? A. Yes. I don’t know what color car I hit, or anything about it.”
It is urged by all of the moving defendants, and particularly by the defendants, Baker, Fox and Bennett, that they were not in any way negligent in the operation of their vehicles; that they were each in turn compelled to stop by a vehicle which was stopped in the road ahead of them and that they had no other *665 alternative. The defendants, Baker, Fox and Bennett further urge that if there was any negligence on their part that it was not a proximate cause of the injuries and damages sustained by the plaintiffs which, they claim, were caused solely by the collision between the plaintiffs’ vehicle and the vehicles belonging to the defendants, Zimmer and Bundy Concrete Pipe Company.
There was no testimony on the part of any of the defendants that they proceeded to the rear of the stranded vehicles at any time and placed any flares or warning signals or took any action personally to proceed to the rear of the stranded vehicles and give warning to any approaching vehicles. There is no testimony to this effect on behalf of the defendant, Bundy Concrete Pipe Co., or the defendant Louis Zimmer, except for the statement of the driver of the Bundy vehicle that he went to the rear of his vehicle, wiped off the rear directional light and turned it on so it was flashing. Someone in the group went to a nearby farmhouse and called the Sheriff in an effort to stop traffic.
While it would appear to me that there is merit in the contention of the defendants, Baker, Fox and Bennett, that any negligence on their part is not in any way shown to be a proximate cause of the injuries and damage to the plaintiffs, I feel that there might well be evidence which would require the court to submit to a jury a question whether the congregation of all of the defendants in one or two of the stranded automobiles ahead of the Zimmer and Bundy Concrete Pipe Company vehicles at a time when the blocked condition of the highway caused by the Bundy and Zimmer vehicles was well known to all of the defendants, might not be considered by the jury as some evidence of negligence on all or some of their parts, due to the fact that no action was taken by any of the defendants to warn approaching vehicles. There is a sufficient question in this respect, in my opinion, so that the court cannot, on a motion for summary judgment, say that the defendants are not negligent as a matter of law. The testimony of the defendants taken at the examination before trial varies somewhat, one from the other, as to just what occurred while the defendants were discussing the accident and its effects while waiting in one or more of the vehicles and the court is unable to say what the testimony would reveal at the time of trial.
The defendants’ motions for summary judgment, therefore, upon the ground that they are not guilty of negligence, as a matter of law, are denied.
*666 The defendants next move for summary judgment upon the ground that the plaintiff, Evans ’ testimony on the examination before trial, clearly establishes that he was driving his vehicle at a speed of from 20 to 25 miles per hour at a time when there was no visibility and he could not see ahead; that he was pro- • ceeding by watching the side of the road; that he saw nothing at anytime of any of the vehicles of any of the defendants in the roadway ahead of him; that at no time did he see the vehicles with which his truck collided and that he admits to no recollection of anything happening from the time he was driving along the road at 20 to 25 miles per hour until the time he woke up upon the floor of the farmhouse.
It is clear from the testimony which I have quoted above, that this contention on the part of the defendants is correct. The plaintiff, Evans, has submitted no additional evidence by answering affidavit and has in no way disputed or questioned the fact that he testified in the examination before trial as quoted above. He has not indicated that he was in error in such testimony or that he desired to change it in any way. He has had the opportunity to and has examined all of the defendants before trial and does not point out from anything in their testimony or by the suggestion of any other testimony, that he has any other proof to offer as to his freedom from contributory negligence.
He has the burden of proving by a fair preponderance of the evidence that he was not guilty of contributory negligence. (1 Warren, New York Negligence, pp. 101, 102, § 7, par. 2, subd. [c].)
In my judgment, his testimony clearly indicates that he was guilty of contributory negligence as a matter of law. He conceded he was driving his truck at a speed of from 20 to 25 miles per hour under conditions of no visibility, when he could only proceed by watching the side of the road and at a time when he could see nothing of any vehicles ahead of him even up to and at the actual time of collision. Such testimony, in my judgment, establishes definitely that the plaintiff, Evans, was guilty of negligence which to some extent at least, contributed to the cause of the accident and his injury. Any such negligence on his part would preclude a recovery.
In Albertson v. Ansbacher (102 Misc. 527) at page 529 Judge Lehman stated: 11 Moreover, if we assume that that night an unusual fog existed which would have prevented the defendant’s chauffeur from seeing the plaintiff’s car until he struck it, then the defendant’s chauffeur is convicted of negligence out of his own mouth, for he has testified that his car was *667 going at the rate of about twelve miles an hour, and I think as a matter of law it is negligent for a chauffeur to proceed at the rate of twelve miles an hour in Central Park on a night when he cannot see beyond the hood of his car.” (Diem v. Adams, 266 App. Div. 307; Pfohl v. State of New York, 42 N. Y. S. 2d 372; Mosher v. State of New York, 204 Misc. 580; Powell v. New York Cent. & H. R. R. R. Co., 109 N. Y. 613.) The plaintiff relies on Agren v. Keller (9 A D 2d 1000) and Schuler v. Newhof (276 App. Div. 887). I do not feel that the facts in these cases are comparable with those in the present case. As the court said in the Agren case (supra, p. 1001) “ In negligence cases each is governed, almost entirely, by its own particular facts.” And in the Schuler case, “ In circumstances of limited visibility the question of contributory negligence of the driver running into a standing vehicle is usually left for the jury ”. In the present case it was not a question of limited visibility, it was a question of no visibility.
The plaintiff, Nicholas F. Domenico, Sr., doing business as Nicholas F. Domenico & Sons, was the owner of the panel truck. While he was not present at the time of the accident, the vehicle was being driven on his business, by his employee. Therefore, he is chargeable with the negligence of the defendant, John Evans, and would be barred from any recovery for damage to the vehicle or for loss of use thereof. (1 Encyclopedia of New York Law of Automobiles, § 675, p. 527; Wessels v. State of New York, 194 Misc. 317; New York Tel. Co. v. Scofield, 31 N. Y. S. 2d 393; Mills v. Gabriel, 259 App. Div. 60, 61; Jenks v. Veeder Contr. Co., 177 Misc. 240, mod. on other grounds 264 App. Div. 979, affd. 290 N. Y. 810; Bennrona Corp. v. Mulroney, 254 App. Div. 630.)
Summary judgment in negligence cases is now permitted. (Rules Civ. Prac., rule 113, as amd., eff. March 1, 1959; De Marco v. Young, 192 N. Y. S. 2d 387; Rocco v. Goldman, 23 Misc 2d 995.)
Relief under rule 113 is applicable to defendants’ motions to dismiss a complaint. (Teich v. Aetna Ind. Corp., 11 Misc 2d 530, revd. on other grounds 8 AD 2d 596; Wurlitzer Co. v. Ferris, 15 Misc 2d 650.)
The purpose of summary judgment procedure is to search out the evidentiary facts and determine whether there is a triable issue.' (Kramer v. Harris, 9 A D 2d 282, 283.)
A summary judgment in a negligence action can be granted only in the clearest of cases, cases which are based on proof that would require a court to grant a nonsuit or direct a verdict upon a trial. (Miller v. Rankin, 10 A D 2d 695; Nixon v. New *668 York Cent. R. R. Co., 10 A D 2d 870; Tripp, Guide to Motion Practice [1960 Supp.], pp. 153-154.)
The court feels that this case, as far as the contributory negligence of the plaintiff, John Evans, is concerned, would require the granting of a nonsuit or the direction of a verdict in favor of the defendants.
The motions of each of the defendants, Louis Zimmer, Bundy Concrete Pipe Company, Robert Baker, Peter C. Fox and Frank T. Bennett, for summary judgment dismissing 'the plaintiffs’ complaints, are granted, with $10 costs to each defendant.