VIVIEN S. W. WORDEN, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 18103.)

Third Department, November 17, 1927.

State — claims against State — action for injuries suffered when automobile turned over on State highway — automobile traveling at rate of twenty-five to thirty miles per hour struck depression, swerved to left and was driven on shoulder 110 feet, when it struck "weeper," swerved to right, struck guard and overturned — not negligence to have shoulder higher than macadam — driver's negligence cannot be imputed to passenger — though depression may have constituted negligence, sole cause of injury was act of driver in driving 110 feet on shoulder of road.

The claimant, who was a passenger in an automobile which overturned on a State highway, has no cause of action against the State, for it appears that the sole cause of the accident was the negligence of the driver. The evidence shows that there was a slight depression in the pavement and that when the automobile, which was being driven at from twenty-five to thirty miles per hour, struck

that depression it swerved sharply to the left and was driven for a distance of approximately 110 feet on the shoulder of the road, which is somewhat higher than the macadam. After being driven that distance the automobile struck a "weeper," a drain dug through the shoulder of the road to drain water from the macadam, turned sharply to the right, struck the road guard and overturned.

While negligence on the part of the driver cannot be imputed to the claimant still, if the depression in the road constituted negligence it was not the cause of the accident, and the claimant cannot recover.

The sole and only cause of the accident was the act of the driver in driving the automobile for 110 feet along the shoulder of the road until the wheel struck the "weeper" which deflected the automobile and caused it to overturn.

APPEAL by the defendant, The State of New York, from a judgment of the Court of Claims in favor of the plaintiff, entered in the office of the clerk of said court on the 28th day of July, 1927.

*Albert Ottinger, Attorney-General [James Gibson, Second Assistant Attorney-General,* of counsel], for the appellant.

*Frederick M. Garfield [Henry P. Nevins* of counsel], for the respondent.

VAN KIRK, J. The court has found each of the requests proposed by the claimant and has made its findings and decision in the exact words of the claimant's requests, with the exception of the amount of damages. It found the following: On the 13th day of June, 1925, near mid-day, claimant was a passenger in an automobile intending to go from Saranac Lake to Montreal by way of Plattsburgh. The accident happened about ten miles southwest of Plattsburgh on a road maintained by the State under the " gang system." The highway is spoken of as running north and south, which is sufficiently accurate. Where the accident happened there was a depression in the road surface, about four feet wide, nine feet long and " from three to six inches deep," extending at about right angles from the west side of the macadam a little beyond the center thereof. Northerly from this depression there was a ditch, called a " weeper," dug through the shoulder to drain water from the macadam into the ditch west of the shoulder. This weeper was about one foot wide and six inches deep, with sharp abrupt shoulders. When the automobile in which claimant was riding ran through this depression, it " swerved to the left; " ran along the shoulder and struck " the weeper;" turned to the right across the road; " struck the guard; turned sharply to the left and tipped over, causing injury to this claimant. * * * The highway where this accident occurred was not in a safe and suitable condition for public travel. * * * The State was negligent in the maintenance of said highway, which negligence was the approximate cause of the accident." At defendant's request the court made the

following findings: " The shoulders are built to support the pavement and grass is permitted to grow to prevent the shoulders from breaking away from the pavement. * * * The road gang started patching and shouldering on April 1, 1925; was steadily at work during the spring and completed the repairs from end to end on May 27th or 28th, * * * except that they failed to patch the crack [presumably the depression] in question." The west side of the highway was oiled on June fifth; the oiling of the east side " at the point of the accident was completed June 9th. After the oil was spread it was covered immediately with number 1 stone and the asphalt cut back used, which contained 30 to 35 per cent naphtha, would dry in 24 hours. The preparation used on this highway dries so fast that 4 hours after its application it can be driven over without any throwing of material and after 8 hours screenings cannot be applied so that they will stay. The road was not soft and slippery on the 13th of June, 1925. * * * In the early part of May, 1925, the repair gang took a log out of the road-bed * * * where the depression later appeared, sub-based with several layers of six or eight-inch stone, each layer being pounded down until the surface was reached and then two inches of No. 2 stone were placed on top. It was then too cold to put on a patch. On May 20, 1925, the workmen scraped out the hole, packed it down, put on two inches of stone and tar and pounded it in so that surface was level with the pavement." On June 13, 1925, when the car in which claimant was riding went over the depression, it " swerved to the left, ran along the shoulder of the road, shot across the road, struck the guard rail with sufficient force to tear out one of the posts and overturned. * * * From the time the car left the depression until it overturned it travelled approximately 160 feet."

The court found that it was from 50' to 80 feet between the depression and the weeper into which the car ran when it ran into the guard rail and overturned. We disapprove of this finding of distance. The location of the depression and of this ditch through the shoulder was not disputed and actual measurements showed that the distance between the depression and this ditch was in excess of 110 feet. Moreover the finding of the court is that between the depression and the place where the car overturned was about 160 feet; and the car, after it struck this weeper, went but a short distance before it overturned.

While we think there is grave doubt whether the finding that the depression, at any point, was six inches deep is sustained by any preponderance of evidence, we pass it without further comment

43

because we have concluded that the vital question in the case is whether or not this depression was a proximate cause of the accident. There was no negligence in having the shoulder of the road covered with grass and its surface a few inches higher than the edge of the macadam. This was in accord with the plan of construction and the court has found the reason therefor, namely, that these shoulders are built to support the pavement and the grass is permitted to grow to prevent the shoulders from breaking away from the pavement. It is also a proper construction to cut a small weeper through this shoulder to conduct the water from the edge of the macadam into the main ditch along the road. The shoulder is not constructed as a place on which to travel; irregularities in the surface thereof are not a menace to the traveling public. We may assume that, when the car struck the depression, it swerved, as the court found, and its left wheels went upon the west shoulder of the road. At that time and by that happening neither the car nor any person therein was injured. If the car had then been turned back upon the macadam there would have been no injury. There is no explanation why it was not so turned back. They say the car was going but twenty-five or thirty miles per hour. Going at this moderate rate of speed it was easily guided; the driver kept the left wheels of the car on this shoulder, which was but two and a half feet wide, for a distance of more than one hundred feet before he struck into this weeper. We think that so driving the car was the distinct negligence which caused the injuries, entirely separate and apart from any negligence of the State, the sole promixate cause of the accident. When the car had swerved and took its course on the shoulder under the control of the driver, no part of the car being injured, the happening at the depression was a closed incident. The driver of the car was not a witness and there is no suggestion that he was injured or any more disturbed by the occurrence at the depression than was the plaintiff. No reason is suggested why he did not slow down or turn back on the roadbed. He had plenty of time. Nothing which the State had done or caused kept him from slowing down or from the roadbed. While it is true that the negligence of the driver cannot be attributed to a passenger in the car, yet, where the negligence of the driver is the sole cause of the accident, and no negligence upon the part of the State was a contributing cause, the plaintiff cannot recover. If the depression had diverted the car into the weeper, or so near it that the driver could not with reasonable care and control avoid hitting it, the depression might have been a contributing cause of the accident and the State liable. But no such condition is disclosed; there were intervening causes between the depression and the accident.

When the driver had full control of his car he continued to drive off that part of the highway intended for travel. Driving upon the shoulder and failing to stop the car were the acts of the driver alone, for which the State was in no wise responsible. In reaching our conclusion we have assumed, as the court found, that the car was going but twenty-five or thirty miles per hour.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

COCHRANE, P. J., HINMAN, McCANN and DAVIS, JJ., concur.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves the finding that between the depression and the weeper was a distance of fifty to eighty feet.