ROGER WILLIAM SHAFT, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23197.)

Court of Claims, May 2, 1933.

*Fogle & Bedenkapp* [*J. Carl Fogle* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. On July 26, 1932, the claimant, accompanied by Mr. and Mrs. U. Faber Roberts and by one Harry Taylor, all residents of Lockport, N. Y., started for Olcott Beach to attend a picnic. They proceeded in an automobile driven by Roberts along what is known as route 78, a public highway maintained by the State of New York under the patrol system. At a point about one and four-tenths miles north of Wright's Corners their automobile collided with a south-bound automobile driven by one John Clark. The collision took place easterly of the center of the highway and the two automobiles locked together and came to rest in the ditch on the east side. Roberts was killed and Taylor, Clark, this claimant and perhaps others were injured.

The accident occurred a few minutes after six o'clock P. M. It was raining hard at the time of the accident. The day had been cloudy and a drizzle had begun at five o'clock that afternoon. Route 78, near the scene of the accident, was a concrete highway, sixteen feet wide, extending in a practically level straightaway stretch for between two and three miles below Wright's Corners. No other automobiles were immediately at or near the scene of the accident when it occurred.

Shaft, the claimant herein, called as a witness in his own behalf, testified that he was unconscious for twenty-four hours after the accident and can recall nothing after he got into the automobile at Lockport. Clark, the driver of the south-bound colliding automobile, was not called to testify upon this trial and in so far as the determination of this claim is concerned the court has not the benefit of his version of the occurrences, although about two weeks subsequent to the trial of this claim he testified upon the trial of his own claim arising out of the same accident. (*Clark* v.

*State of New York,* 147 Misc. 457.) It may be assumed, therefore, that he was available as a witness upon this trial, no explanation having been given of his failure to attend and testify.

The only eye-witness who testified concerning the accident was Taylor, a fellow-passenger with Shaft in the Roberts car. He stated that he first noticed the Clark car approaching when it was three hundred feet away. He said: " It came right along at us and dropped off the concrete and came back on the concrete again and hit us. Q. About how far was the Clark car from you when it came back onto the concrete? A. About twenty feet."

Taylor says he saw the Clark car swerve towards the east at a diagonal. " It came back on the road and started to rock and came directly into us and smashed us. * * * There was a blinding crash and it seemed that the whole front end went together. * * * The collision took place midway between the concrete and the ditch."

Taylor further says that after the collision he got out of the car and immediately examined the road. On the concrete he saw tire marks and a drop of four to six inches from the concrete to the shoulder at the point where the tire came onto the concrete. The whole shoulder was lower than the concrete.

On cross-examination Taylor said that the Clark car was about thirty-feet away from the Roberts car when it went off the road. " It seemed to me he went off and came back on again and came at us diagonally. It seemed that way to me."

Roberts pulled to the right, Taylor says, but did not have time to get out of the way. On further cross-examination Taylor said: " There was but one tire mark in the road that night at that point and it was the tire mark of the Clark automobile."

Claimant has established by several disinterested witnesses and by photographs taken two days after the accident that the west shoulder of the highway for a distance of several hundred feet extending north and south from the point of accident was depressed below the concrete leaving the perpendicular edge thereof exposed. The difference in level was from one to three and four inches, some witnesses say at points it was six inches. The photographer, who made measurements on July twenty-eighth, stated that at one particular place the exposed edge was four and a half inches deep. The point where he took this measurement has been established as being opposite and about twelve to fourteen feet northerly of the point where the cars piled up in the ditch.

The State does not seriously dispute the existence of the shoulder conditions as testified to by the claimant's witnesses. From the Highway Department's resident engineer, who had supervision of

this particular highway, we learn that he inspected it at least once a week prior to the accident. Therefore, he must have seen and must have been acquainted with the condition which had been observed all summer by not one but many reputable witnesses who had occasion to use the highway daily in going back and forth from Lockport to Olcott. According to this engineer, during the week of April 25, 1932, the shoulders had been graded with a power grader and this work had been repeated during the week of May twenty-eighth. The process was to draw in the stone and slag with a scraper towards the pavement, leaving the shoulders level with the concrete, the length of time that the dirt, stone and slag would stay there depending upon weather and traffic conditions. The engineer testified: " The difference in the surface of the shoulder and surface of the pavement was about two to four inches at this particular point of the accident. * * * That wouldn't be the full width of the shoulder. It is adjoining the concrete pavement. * * * The width of an automobile tire." He further testified that this would be four to five inches wide and that beyond this depression the shoulder would slope up again.

The photographs offered in evidence, which the engineer admitted fairly represented conditions, dispute him, and clearly indicate that the full width of the shoulder up to the border line of grass and weeds was depressed below the concrete.

We have remarked that Clark, the driver of the south-bound car, did not testify upon this trial, and although his testimony upon a subsequent trial has been heard by us it is not before the court at this time and we shall give it no consideration in reaching a determination in this case. From the testimony of Taylor, however, and from the photographs showing the condition of the respective automobiles immediately after the accident we unhesitatingly reach the conclusion that Clark was driving more rapidly than the conditions of the road and of the weather justified and that his automobile was not under proper control and that he was negligent in running off onto the shoulder and attempting to return to the concrete. (*Gould* v. *State*, 130 Misc. 776; affd., without opinion, 224 App. Div. 773.) .

" The shoulder is not constructed as a place on which to travel; irregularities in the surface thereof are not a menace to the traveling public." (*Worden* v. *State*, 221 App. Div. 671.)

However, we have held that a rut existing along the edge of a macadam highway, apparently caused by the action of rains following the breaking away of the edge by wheels of wagons and automobiles, and known to the State's patrolmen to exist a week prior to the accident and found to be a contributing cause thereof,

was sufficient to hold the State liable to one free from contributory negligence.   (*Peck* v. *State*, 137 Misc. 840.)

There is no doubt in my mind that the abrupt exposed perpendicular edge of the concrete was sufficient to and did cause Clark's automobile suddenly to swerve to the east and hit the Roberts car when Clark attempted to get back onto the concrete, whether or not we assume that the point of measurement of four and a half inches was the exact point where the Clark wheels caught.   It may well be that the Roberts car was likewise being driven too rapidly but of that we are not concerned in the present case.   Certainly there is no suggestion, not the slightest, of any negligence on the part of Shaft and we find him free from contributory negligence causing the accident.

Granted then that the accident would not have occurred but for the negligence of Clark nevertheless the difference in level between the concrete and shoulder of the highway was an efficient contributing cause and we find the State liable to this claimant.

Claimant's injuries fortunately were not serious.   He incurred bills for hospital, physician and medical supplies totaling $45.   He was unable to work from July twenty-sixth to August ninth and from then to October first worked three days a week.   He was foreman in a chemical manufacturing plant earning fifty cents an hour.   An award of $750 is made to include damages for personal injuries, loss of earnings and expenses incurred.

ACKERSON, J., concurs.