Charles Lambiase, J.
On the 3d day of March, 1954, at or about 11:00 p.m. testate, Roderick McCauley, age 58, was driving his 1950 Ford automobile in a general easterly direction along the southern or right-hand lane of New York State Highway No. 3 at a point thereon some distance westerly of a certain *926 bridge forming part of said highway, said bridge spanning the Eaeqnette Eiver and. being located at or near the Hamlet of Piercefield, in the Town of Piercefield, St. Lawrence County, New York. When the automobile came around and completed a long 3% curve, it entered upon a straightaway which extends some 600 or 700 feet to the east and to the westerly end of said bridge. At that time the lights of a vehicle were seen. The lights were high up on a vehicle, and when first observed appeared to be stopped at or near the juncture of what is designated on claimants’ Exhibit 32 as “ Old Cone. Highway ” with the north edge of Highway No. 3, or to be just coming out of the ‘‘ Old Cone. Highway ’ ’ onto the northerly and westbound lane of said Highway No. 3. At this point and at this time testate, Boderick McCauley, turned his automobile to the right and on to the shoulder adjoining the south edge of the pavement and drove thereon for about 400 feet. His line of travel on the shoulder took him past the vehicle with the headlights in question, which vehicle was a snowplow, and his direction of travel for said 400 feet was in a direct line with the southwest abutment of the bridge. While t-hus traveling on the shoulder, he drove over and beyond two intersections and passed by another road which came in on the north side of Highway No. 3 and dead ended there. When the automobile, traveling as aforesaid, reached a point approximately 125 to 150 feet west of the west end of the bridge and as Boderick McCauley was attempting to get his automobile back onto the pavement of the highway, he accelerated the speed of the automobile, it regained the pavement, went across it including the north side and westbound lane thereof, continued across the 10-foot-wide north shoulder, passed in between a metal screw or pin driven into the ground anchoring a galvanized four-strand cable, which cable was hooked to the northwest abutment of the bridge, and a wooden post then and there located about 10 feet to the north of said anchoring pin or screw, striking both the anchoring screw and the post in going by, but not damaging them severely or knocking them over, went down the embankment on the north side as far as the river’s edge, hung over the river bank for a few moments, and then dropped into the rapidly flowing Eaeqnette Eiver.
There were in said automobile in addition to the driver the following passengers: Francis McCauley, then 19 years of age, son of the driver; Wanda Deshaw, then 14 years of age; Joseph H. Salamv, then 18 years of age; Colette Des Ormeaux, a junior in high school; and Almonzo Hutchins, the last two named being also young persons. Francis McCauley, Colette Des *927 Ormeaux, and Almonzo Hutchins survived, the last named being in the United States Armed Forces in Korea at the time of the trial. The others died. They are the decedents named in the title. It has been stipulated that their deaths were caused by drowning as a result of the accident herein described.
The above-entitled claims were duly filed to recover damages for the death of the foregoing decedents, including allowable expenses incurred in connection therewith and reasonable funeral expenses, and for conscious pain and suffering of each of the deceased. The claims herein have not been assigned and have not been submitted to any other officer or tribunal for audit or determination. However, it appears that the Utica Mutual Insurance Company, under its comprehensive coverage of the McCauley automobile, paid to the estate of Joseph H. Salamy the total sum of $15,500 damages for the death of said deceased; and that it paid to the estate of Wanda Deshaw the sum of $10,500 damages for her death; that in each instance the money was paid without the consent of the executrix of the estate of Roderick McCauley, deceased, and upon the express condition that it was not to be construed as an admission on the part of the estate of said Roderick McCauley of any liability for the same, and that in each instance the estate of the deceased receiving said money reserved its right to proceed against the State of New York notwithstanding. We include these facts by way of recital, and we, of course, have not considered the same in arriving at our conclusion as to the negligence of any of the parties involved in this tragic accident. The claims were tried together by stipulation.
It is alleged that the negligence of the State of New York, its servants, agents, and employees, was the sole proximate cause of the accident resulting in the death of the decedents with no negligence on the part of any of the decedents proximatelv causing or contributing as a proximate cause thereto, the particulars of said negligence being detailed in each of the claims, reference to which is specifically made herein, and in substance being as follows: (1) That New York State Highway No. 3 was negligently constructed and negligently maintained; (2) that there was not a proper and suitable barrier along the northerly side of said highway immediately to the west of said bridge crossing the said Racquette River at the point of the accident to prevent skidding vehicles from skidding down the said steep embankment into the waters of said Racquette River which were immediately adjacent to the highway; (3) that the State had removed by plowing some of the snow wh:ch had accumulated on said Highway No. 3 on said 3d day of March, 1951, that a residue of *928 hard-packed snow remained on the travelled portion of the highway and particularly on that portion thereof immediately westerly of said bridge, that said hard-packed snow became slippery and icy, and that this condition which was dangerous, especially in view of the absence of proper and suitable barriers — which condition as to barriers had existed for a considerable period of time prior to the 3d day of March, 1954 — was permitted to exist and did continue for some time after said road had been plowed without taking any sufficient or adequate steps to eliminate or decrease the dangerous condition; (4) that the State of New York had actual or constructive notice of said dangerous condition, and that the State of New York knew or should have known that said highway was a much travelled one, travelled during all seasons of the year, and knew or should have known that said dangerous condition of the highway was hazardous to the traveling public; (5) that the surface of Highway No. 3 was considerably raised above the level of the shoulder of said highway immediately adjacent to the south side thereof, Avhich difference in elevation was sufficient, especially when road conditions were hazardous as they were on the date of the accident, to cause vehicles traveling from the pavement of the highway onto said shoulder or attempting to regain the road after having travelled on the shoulder thereof, to become unmanageable as the result of the jolting action of the automobile in following either course; (6) that the State of New York failed to have warnings indicating the approach to the bridge over said Eacquette River and the conditions then and there existing; and (7) that the State of New York failed and neglected to install suitable markers or signs indicating road intersections, which intersecting roads entered said Highway No. 3 on the northerly side thereof, that as a result drivers of vehicles on Route No. 3, including the driver of the vehicle involved herein, were not apprised of the existence of such intersecting roads, that headlights of vehicles traveling in the nighttime in a general southerly direction on such intersecting roads would cast their lights over said Highway No. 3, that the intersections were mainly on a curved portion of the highway, of which curve there was no warning by signs or markers, all of which made it appear to drivers of vehicles on Highway No. 3 that the said vehicles approaching from the intersecting road were actually on said Highway No. 3 in a position blocking or partially blocking the same causing the driver of a vehicle, including the driver of the vehicle in which the decedents were riding, who was driving in an easterly direction on said Highway No. 3, in order to avoid a collision, to pull over onto the shoulder on the south *929 side of said Highway No. 3 which shoulder was negligently and carelessly maintained in the respects hereinbefore set forth.
The State of New York denies that there was any negligence on its part which either proximately caused or contributed as a proximate cause to the happening of the accident, and contends that the sole proximate cause was the negligent and careless manner in which the decedent, Roderick McCauley, had operated his automobile immediately prior to and was operating the same at the time of the accident.
The automobile in question was en route to Tupper Lake, New York where lived the driver and the passengers. It was one of several automobiles, including a bus, traveling together which had left Canton, New York earlier that evening. The cars carried students, players, and others who had gone there for a basketball game. The pavement of the road at the point of the accident was 24 feet wide and was covered by a residue of partially frozen and slippery snow. There was no sand or other substance on the surface of said pavement, the latter having been plowed earlier in the evening and the snow having been pushed over and cleared from the south shoulder for a width of about 3 feet, at which time along the shoulder it was piled up to a height of 10 to 12 inches. The snow on the south shoulder was partly wet and partly frozen. It snowed from time to time after the group left Canton, New York, and it was blustery with a sharp wind which blew the snow in front of the automobile and cast it across and upon the windshield where it was melted away by the action of the defroster. It was cold and visibility was poor. In short, it was a typical northern New York March stormy winter night.
The automobiles had stopped at a place called Sevey’s Corners about 18 miles west of Tupper Lake where the McCauley car had slid off the pavement of the highway and had had to be pushed back on. Some of the automobiles had to be given an assist before they were again able to resume their travel eastwardly. Someone left the McCauley car there, and went into another automobile, and Francis McCauley became a passenger in his father’s car at that time. From that point the McCauley car travelled some 12 to 13 miles to the vicinity of the bridge when catastrophe overtook it. None of the occupants of the other automobiles again saw the McCauley car and its occupants until after disaster had engulfed it and them.
It is contended by claimants that a drop-off existed for a distance varying from 350 to 400 feet westerly of the west end of the bridge and on the south side of the highway from the elevation of the concrete pavement to that of the shoulder of *930 the road. It was testified for claimants that the depth of this drop-off in some places was as much as five inches. For the State it was testified that the drop-off was one and one-half to two inches. There is a sharp cleavage in the evidence on this point. There was also testimony for the claimants that the two wooden posts west of the bridge and north of Highway No. 3 to which we have hereinbefore referred were not properly spaced and erected in that the first of the two located to the north of the anchoring pin or screw was about 10 feet to the north of said pin or screw, and in that the second wooden post was spaced 10 feet northerly of the first wooden post. The location and spacing of said posts and of said screw or pin is not contradicted. It is maintained that any drop-off at this point, coupled with the circumstances which existed because of the icy condition of the pavement of the road and of the nearness of the river to the highway, and of the absence of suitable barriers, presented a condition which was dangerous and which condition was due to the negligence of the State of New York for which it should respond in damages should damages result, in the event that a vehicle were forced to use the shoulder of the highway while attempting to regain the pavement and thereafter be caused to go into a skid and eventually to go between the wooden posts or between one of them and the metal screw or anchor and into the river.
While the shoulder is technically part of the road, it is not constructed as a place on which to travel. (Worden v. State of New York, 221 App. Div. 671: Worden v. State of New York, 134 Misc. 848, affd. 228 App. Div. 739; Gould v. State of New York, 130 Misc. 776, 777, affd. 224 App. Div. 773.) And in Flonsburg v. Town of Elbridge (205 N. Y. 423, 430) Judge Collin used this language: “ The town is not responsible for the injuries sustained by the plaintiff consequent upon his straying from the adequate and suitable roadway prepared for travelers. ” But this rule, if strictly adhered to, might work a serious injustice in some cases. In these days of fast automobile traffic a careful driver, through no fault of his own, is sometimes forced onto the shoulder of the road by a careless and negligent-driver who crowds him off the pavement. It would seem, therefore, that the shoulder of the road, while not made to be travelled upon, should be in such condition that it could be resorted to by a prudent driver in an emergency without danger to life and limb. Of course, a driver who finds himself suddenly compelled to go onto the shoulder must immediately bring his car under control and move with such care and caution as the situation demands.
*931 Thus, there is presented the question of whether or not Roderick McCauley was compelled or forced by an emergent situation to leave the highway pavement and to take to and to drive upon the shoulder. In our opinion, the record does not support a finding of emergency not of his own making which justified his driving upon the shoulder of the highway, and we so find. While there is a grave doubt whether the drop-off was five inches or not more than two inches, there was some drop-off from the pavement at points along the 400 feet immediately west of the westerly end of the bridge. However, when the automobile went onto the shoulder and continued thereon under the control of the driver, no part of the car being damaged and no one injured, that incident was closed. No reason is suggested why the automobile was not slowed down or stopped. McCauley was undoubtedly familiar with this road having been for many years a resident of Tupper Lake; and it was apparent when he went onto the shoulder that if he continued on as he was then traveling, he Would run into the southwest abutment of the bridge or into the river. We pass this phase of the case without further comment because we have concluded upon the record that this drop-off was not a proximate cause of the accident. In fact, it is claimants’ position that the shoulder condition or drop-off is strictly incidental to the real cause of this disaster, which brings us to claimants’ next point of contention, viz., the barriers on the north side of the highway at the west end of the bridge. It is maintained by claimants that the real cause of the disaster was the State’s negligence with reference to the construction, type, and maintenance of the posts or barriers erected and in place on the north side of the highway at and near the west end of the bridge.
In a recent case, Boyce Motor Lines v. State of New York (280 App. Div. 693, 696, affd. 306 N. Y. 801), the duty of the State of New York with respect to the construction and maintenance of highways was stated to be that: “It had a duty to construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. But even so, a certain risk was unavoidable. Roads cannot always be straight and level, and curves with descending grades are always potentially dangerous. A highway may be said to be reasonably safe when people who exercise ordinary care can and, do travel over it safely(Emphasis supplied.)
It was not shown that any accident similar to the instant unfortunate one had ever occurred on said highway at the point in question, and there is nothing in the record to indicate that *932 such an accident as this would be likely to occur. The conclusion is inescapable that there was such a combination of circumstances, all concurring at the time to produce it, that no reasonable man could impute negligence to the State of New York because it did not foresee it under the circumstances herein. (Lane v. Town of Hancock, 142 N. Y. 510.)
‘ ‘ That which never happened before, and which in its character is such as not to naturally occur to prudent men, to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency.” (Hubbell v. City of Yonkers, 104 N. Y. 434, 439.)
“While the general use of motor vehicles has developed a new class of risks, it is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over country highways. To impose on towns the burden either of constructing substantial barriers at every point of possible danger or of paying damages when unusual accidents occur which such barriers might have prevented, would be to advance the present measure of liability beyond the rule of ordinary care into the field of insurance against accidental injury or death.” (Roberts v. Town of Eaton, 238 N. Y. 420, 422-423; Best v. State of New York, 203 App. Div. 339, affd. 236 N. Y. 662.) The State cannot be held to be an.insurer of the safety of its highways. Upon this record we are of the opinion that there was no negligence on the part of the State of New York in connection with the barriers and posts on the north side of the highway at the west end of the bridge which proximately caused or contributed as a proximate cause to the accident, and we discuss it no further for that reason.
We have concluded that this accident would not have happened but for the manner in which Roderick McCauley had operated his vehicle immediately prior to the happening of thé accident and was operating his vehicle at the time thereof. While we are aware that the burden of proving contributory negligence of a decedent is placed upon the defendant (Schrader v. New York, Chicago & St. Louis R. R. Co., 254 N. Y. 148; Decedent Estate Law, § 131), the test or rule by which this question is determined is still the same, viz., whether, or not under all the facts and circumstances a reasonably prudent person in decedent McCauley’s situation would have done substantially as he did. We are constrained to conclude that a *933 reasonably prudent person would not have done as Roderick McCauley did.
We appreciate that the negligence of the driver herein cannot be imputed to the passengers in the automobile. Yet, where the negligence of the driver is the sole cause of the accident, and no negligence on the part of the State was a contributing cause, claimant passengers cannot recover; and this, notwithstanding the fact that we find no negligence on the part of the decedents Wanda Deshaw and Joseph H. Salamy.
We conclude that the sole proximate cause of the accident which we have been discussing was the negligent manner in which decedent, Roderick McCauley, had operated his automobile immediately prior to and was operating the same at the time of the accident. It, therefore, follows that claimants and each of them have failed to establish by a fair preponderance of evidence that any negligence of the State of New York, its officers and employees, proximately caused the accident or contributed thereto as a proximate cause. In the light of that determination we do not deem it necessary to discuss and we do not discuss the question of damages.
The claims of the claimants and of each of them must be and hereby are dismissed on the merits.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered (Civ. Prac. Act, § 440). Let separate judgments be entered accordingly.